# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

VOLKER STROBEL, HEIKE
STROBEL, and HANS BAUR,
in their individual capacities and on
behalf of UNC Holding LLC and
V.I.P. DRINKS BOTTING LLC,

      Plaintiffs,

v.                                            No. CIV 18-0656 RB/JFR

UWE RUSCH and DR. MABEL
RUSCH,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Mr. Uwe Rusch began developing a brand of cordials in 1998 under the name CORDIALS V.I.P. Drinks. Mr. Rusch asserts ownership in the copyright to the brand and also registered the trademark to the brand's logo (the "Royal Logo"), which has been used to sell CORDIAL V.I.P. Drinks since 2005, primarily in Europe. In 2012, he formed UNC Holding LLC ("UNC-FL") in Florida to establish his business in the United States. In 2013 Mr. Volker Strobel, Mrs. Heike Strobel, Mr. Hans Baur, and Mr. Gregor Fischer agreed to invest money with Defendants in the CORDIALS V.I.P. Drinks business. The parties later agreed to dissolve UNC-FL and re-establish the business in New Mexico under the name UNC-NM. At some point, their business relationship soured. Plaintiffs contend that Defendants violated the parties' agreement and brought this lawsuit for a variety of tort and contract claims. Defendants have filed 22 affirmative defenses and 14 counterclaims and argue that Plaintiffs' actions have infringed on their rights and have made any purported contract unenforceable. Plaintiffs move to dismiss the counterclaims and strike certain affirmative defenses. The Court will grant both motions in part.

## I.    Factual Background[1]

Mr. Rusch began developing a line of cordials in 1998. (Doc. 40 (Answer & Countercl.) ¶ 10.) He designed the Royal Logo for the CORDIALS V.I.P. Drinks brand and asserts that he has "sole ownership in the copyright of the design logo . . . ." (*Id.* ¶¶ 11–14.) He registered the CORDIALS V.I.P. Drinks logo as an international trademark through the World Intellectual Property Organization (WIPO) and later transferred ownership of the trademark to his wife, Dr. Mabel Rusch. (*Id.* ¶¶ 24–25.) He also "granted Dr. Rusch a non-exclusive license to . . . use the Royal Logo copyright . . . in connection with the sale, advertising, marketing, and services of CORDIALS V.I.P. Drinks." (*Id.* ¶ 21.) Mr. Rusch has used the Royal Logo to market CORDIALS V.I.P. Drinks in Europe since 2005. (*Id.* ¶¶ 15–18.)

Defendants moved to Florida in 2008 to establish their cordials business in the United States. (*Id.* ¶ 27.) They met the Strobels in 2012, and the Strobels became acquainted with the Rusches' cordials business. (*Id.* ¶¶ 30–35.) Mr. Strobel invested in another of Mr. Rusch's businesses, but after that enterprise failed "Mr. Strobel approached Mr. Rusch about investing in the CORDIALS V.I.P. Drinks business." (*Id.* ¶¶ 36–45, 55.) Mr. Strobel, Mr. Rusch, and Mr. Baur met in Arizona in February 2013 to hammer out details of the agreement. (*Id.* ¶¶ 57–58.) The parties later brought Mr. Fischer into the partnership. (*Id.* ¶ 59.)

The parties' Partnership Agreement for UNC, Holding LLC (the "Partnership Agreement") provided that Dr. Rusch would convey to the business her trademark rights. (*See* Doc. 41-A at 2.) In May 2013 Dr. Rusch executed two documents that would initiate the transfer of the CORDIALS V.I.P. Drinks trademark to UNC-FL. (Answer & Countercl. ¶ 60.) Mr. Strobel was responsible for

---

[1] The Court recites the facts as they are derived from Defendants' Second Amended Answer, Affirmative Defenses and Counterclaims (Doc. 40) and resolves all factual disputes in favor of Defendants.

submitting the documents and the appropriate payments to the correct authorities. (*Id.* ¶ 61.) Mr. Strobel told his partners that the transfer had been initiated, but he never finalized the transfer and Dr. Rusch still owns the trademark. (*Id.* ¶¶ 62–65, 112.)

In March 2014, Mr. Strobel asked Mr. Rusch to dissolve UNC-FL effective April 18, 2014, giving Mr. Strobel time to set up UNC-NM. (*Id.* ¶ 66.) Defendants contend that, despite his representations to the contrary, Mr. Strobel failed to comply with all requirements necessary to re-establish the business in New Mexico, such as retaining an attorney or transferring funds from UNC-FL's bank account to UNC-NM's bank account. (*Id.* ¶¶ 67–74.) Mr. Strobel took other actions without the input or approval of Mr. Rusch, including changing the business's CPA and dissolving one of the business's two independent subsidiaries. (*Id.* ¶¶ 75–81.)

In October 2016, Defendants received a letter from WIPO requesting renewal of the trademark, which was still listed under Dr. Rusch's name. (*Id.* ¶ 82.) Believing Mr. Strobel completed the transfer, Mr. Rusch had designed and printed product labels and updated the business's website to reflect that the trademark was owned by UNC, Holding LLC. (*Id.* ¶¶ 83–86.) Defendants asked Mr. Strobel to explain why the trademark had not been transferred, and he told them that the business had no money to pay for the renewal. (*Id.* ¶ 87.) Defendants contend that this statement was false. (*Id.* ¶ 88.) Defendants paid for the renewal costs themselves based on Mr. Strobel's representations that UNC-NM would repay them when it had funds. (*Id.* ¶ 89.)

In February 2018, Mr. Strobel asked Mr. Rusch to meet with him and Mr. Baur to discuss the future of UNC-NM, but Mr. Rusch refused to meet them without all of the members present. (*Id.* ¶¶ 94–95.) At Mr. Strobel's request, Mr. Rusch organized a General Meeting to be held on April 19, 2018. (*Id.* ¶¶ 96–97.) On the day of the meeting, Mr. Strobel emailed to cancel participation in the meeting on behalf of himself, Mrs. Strobel, and Mr. Baur. (*Id.* ¶ 98.) Mr. Rusch

and Mr. Fischer, who together "formed a quorum with a majority of 56% of the voting rights" in the business, went forward with the meeting and voted to dismiss Mr. Strobel as CEO of the second independent subsidiary. (*Id.* ¶¶ 100–01.) Despite his dismissal, Mr. Strobel later "seized the bank account of" the subsidiary and wrote a check to the CPA. (*Id.* ¶ 103.) Mr. Strobel also discovered that Mr. Strobel had, through the CPA, "eliminated Mr. Rusch's 'Income Shares' in UNC-NM." (*Id.* ¶ 104.) In May 2018, Mr. Strobel transferred money from the UNC-FL bank account to his own personal bank account. (*Id.* ¶ 106.) On March 1, 2019, Defendants registered the Royal Logo with the United States Copyright Office. (*Id.* ¶ 114; *see also* Doc. 40-1.)

Plaintiffs filed this lawsuit on July 10, 2018, and contend that Defendants have infringed on UNC-NM's rights in the trademark and caused damage to Plaintiffs. (*See* Docs. 1; 62 (Am. Compl.).) Defendants assert 22 affirmative defenses and 14 counterclaims. (Doc. 40.) Plaintiffs now move to dismiss all of Defendants' counterclaims (Doc. 41) and to strike many of their affirmative defenses (Doc. 46).

## II.    Legal Standards

### A.    Motion to Dismiss Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the [counterclaim] as true and must construe them in the light most favorable to the [counterclaimant]." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the counterclaim does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[W]hile ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect . . . ." *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1122 (D.N.M. 2011) (citing *Duprey v. Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 1192–93 (D.N.M. 2009)).

> [F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record. However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein.

*Id.* at 1122–23 (quoting *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006)).

Plaintiffs ask the Court to take judicial notice of the Partnership Agreement (Doc. 41-A[2]) attached to their motion, as it is referenced in the Amended Complaint and the Counterclaims, and it is central to the lawsuit. (*See* Doc. 41 at 2 (citing *Radian Asset Assurance Inc. v. Coll. of the Christian Bros. of N.M.*, No. CIV 09-0885 JB/DJS, 2011 WL 10977180, at *17 (D.N.M. Jan. 24, 2011)).) *See also Raja v. Ohio Sec. Ins. Co.*, 305 F. Supp. 3d 1206, 1238 n.9 (D.N.M. 2018). Although Defendants question whether the Partnership Agreement is valid and enforceable, they do not dispute its existence or its authenticity. (*See* Doc. 49.) As the "[C]ourt may take notice only of the authenticity and existence of [judicially noticeable] documents, not the validity of their contents[,]" *Port-A-Pour, Inc. v. Peak Innovations, Inc.*, No. 13-CV-01511-WYD-BNB, 2015 WL 292913, at *3 (D. Colo. Jan. 20, 2015) (citation omitted), the Court finds it may consider the Partnership Agreement.

Similarly, the Court takes judicial notice of Defendants' March 1, 2019 registration of the

---

[2] As the parties' purported contract is written in German (*see* Doc. 41-B), Plaintiffs also included an English translation (Doc. 41-A). Defendants do not dispute the authenticity of the original contract or the accuracy of the translation. (*See* Doc. 49.)

Royal Logo with the United States Copyright Office, which they attached to their Answer and reference throughout their Counterclaims. (*See* Doc. 40-1.) While Plaintiffs contend that Mr. Rusch's claim to ownership of the copyright is invalid, they do not dispute the existence and authenticity of the registration record. (*See* Doc. 51 at 5.)

### B.   Motion to Strike Affirmative Defense Standard

"Federal Rule of Civil Procedure 12(f) permits the court to 'strike from a pleading an insufficient defense.'" *Wells v. Hi Country Auto Grp.*, 982 F. Supp. 2d 1261, 1263 (D.N.M. 2013) (quoting Fed. R. Civ. P. 12(f)). "However, motions to strike affirmative defenses are generally disfavored." *Id.* (citing *Friends of Santa Fe Cty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1343 (D.N.M. 1995)). "To strike a defense, its legal insufficiency must be 'clearly apparent.' A court 'must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed.'" *Id.* (quoting *Friends of Santa Fe Cty.*, 892 F. Supp. at 1343). The purpose of an affirmative defense is simply "to provide the plaintiff with fair notice." *Id.* (citing *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1257 (D. Kan. 2011)). "Rule 12(f) is intended to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *Id.* (citing *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 648–49 (D. Kan. 2009)).

## III.   The Court will grant in part Plaintiffs' motion to dismiss.

### A.   Defendants have sufficiently pleaded that Dr. Rusch owns the trademark and Mr. Rusch owns the copyright at issue.

The Court first turns to Plaintiffs' contention that Defendants have failed to sufficiently plead that Dr. Rusch still owns the trademark at issue. (*See* Doc. 41 at 6–9.) Plaintiffs assert that the Partnership Agreement "conclusively" demonstrates that Dr. Rusch does not own the

trademark, but instead transferred her rights in it to the business. (*Id.* at 9.) Yet in their Complaint, Plaintiffs allege that Dr. Rusch "is the current owner of the registration for the [trademark]" (Am. Compl. ¶ 14); that she "had agreed to transfer her rights in the [trademark] to [the business], never did so" (*id.* ¶ 22); and that she has "refused to transfer the ownership and registration of the [trademark] to UNC-NM" (*id.*). Thus, Plaintiffs' own pleadings contradict their argument.

Moreover, the language of the Partnership Agreement itself does not provide the proof of transfer of ownership on which Plaintiffs rely. To the contrary, the Partnership Agreement provides that Dr. Rusch "hereby undertakes to convey to the Holding all rights to the CORDIALS trademark . . . ." (Doc. 41-1 at 2.) This language does not necessarily signify that Dr. Rusch had *already performed* the transfer of her rights in the trademark to the business, it could also mean that she had simply *promised* to do so. *See Undertake*, Black's Law Dictionary (10th ed. 2014) (to undertake is "to take on an obligation or task" or "to give a formal promise; guarantee"). The next paragraph clarifies the meaning: it states that "[t]he transfer of ownership of these rights will be initiated immediately *after* the signing of this agreement." (Doc. 41-1 at 2 (emphasis added).) And as Defendants averred, Dr. Rusch indeed executed the necessary transfer documents, but Mr. Strobel, who was responsible for submitting the documents and the appropriate payments to finalize the transfer, never took the necessary actions. (Answer & Countercl. ¶¶ 60–65.) According to Defendants' allegations, therefore, the transfer was never consummated. Thus, the language of the Partnership Agreement does not provide irrefutable proof of ownership as Plaintiffs suggest.

The same is true of Mr. Rusch's ownership of the copyright at issue, which he "granted Dr. Rusch a non-exclusive license to . . . use . . . ." (*Id.* ¶ 21.) The Partnership Agreement does not specify when or how Defendants were to transfer the copyright and/or the license to the business, and Plaintiffs do not specifically discuss ownership of the copyright in their Amended Complaint.

(*See* Docs. 41-1; Am. Compl.)

Finally, the trademark's registration record[3] reflects ownership by Dr. Rusch; and the copyright's registration record reflects ownership by Mr. Rusch. (Doc. 40-1.) Plaintiffs note that "'the law will not permit' the presumptions of ownership evidenced by a registration 'to supersede a contractual arrangement between the parties.'" (Doc. 41 at 9 (quoting *Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425, 437–38 (S.D.N.Y. 2004)).) *See also GTE Corp. v. Williams*, 904 F.2d 536, 539 (10th Cir. 1990) (discussing "the evidentiary presumption under 15 U.S.C. § 1115(a) of exclusive right to use a registered mark") (citation omitted). However, Plaintiffs cite no authority to establish that they have overcome this presumption when they have demonstrated that the transfer of ownership was never completed *and* that Defendants have continued to use the trademark "in connection with businesses they are operating, for the purpose of producing and marketing beverages under that mark . . . ." (Am. Compl. ¶ 27.) Thus, whether the Court analyzes the motion under the standard of review applicable to a motion to dismiss or a motion for summary judgment, the Court finds this issue should be resolved in Defendants' favor.

### B. Counterclaim I: False Designation of Origin and False Advertising under 15 U.S.C. § 1125(a)

Defendants bring their first counterclaim under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). (*See* Answer & Countercl. ¶¶ 122–32.) Section 1125(a) "creates two distinct bases of liability: false association [(also known as false designation of origin)], § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Intermountain Stroke Ctr., Inc. v. Intermountain Heath Care, Inc.*, 638 F. App'x 778, 784 (10th Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components,*

---

[3] The Court completed its own search at the official United States Patent and Trademark Office website, https://www.uspto.gov/trademark, on January 3, 2020, and attaches the resulting registration record as an exhibit to this Memorandum Opinion and Order. Judicial notice of this record is proper, because the record "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2).

*Inc.*, 572 U.S. 118, 122 (2014)) (subsequent citation omitted). Defendants do not specify which section they bring their claim under, but it appears that they are bringing a claim for false designation of origin under § 1125(a)(1)(A). To state such a claim, Defendants must demonstrate that: (1) they have "a protectable interest in the mark; (2) that [Plaintiffs have] used 'an identical or similar mark' in commerce"; and (3) that Plaintiffs' "use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (internal quotation and citation omitted).

Defendants assert that: (1) "Dr. Rusch has a protectable ownership interest in the CORDIALS V.I.P. Drinks trademark" (Answer & Countercl. ¶ 124); (2) Plaintiffs used Dr. Rusch's trademark to promote, advertise, and sell goods in commerce (*id.* ¶ 128); and (3) this use is likely to confuse consumers regarding the origin of the goods (*id.* ¶¶ 129–30).

Plaintiffs' arguments that Defendants "have not adequately alleged they own the trademark, and have failed to state a claim under 15 U.S.C. § 1125(a)" (Doc. 41 at 12 (citation omitted)), or that Dr. Rusch "cannot allege an injury given that . . . she does not own the subject trademark rights" (*id.* at 13), are moot given the Court's finding above. Plaintiffs do not attack the other two prongs, and the Court finds that Plaintiffs' motion should be denied as to the false designation of origin claim under § 1125(a)(1)(A).

Plaintiffs further argue that "Dr. Rusch has not alleged such facts or any statements made by [Plaintiffs] in connection with the commercial advertising or promotion of a product . . . ." (*Id.*) This is relevant to a claim for false advertising under § 1125(a)(1)(B). To demonstrate a claim under § 1125(a)(1)(B), Defendants must show:

> (i) that [Plaintiffs] made a false or misleading statement of fact in a commercial advertisement about [their] own or another's product; (ii) the misrepresentation is material, in that it is likely to influence the purchasing decision; (iii) the

misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (iv) [Plaintiffs] placed the false or misleading statement in interstate commerce; and (v) the Defendants have been or are likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with [their] products.

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1239 (D.N.M. 2010) (citing *Zoller Labs., LLC v. NBTY, Inc.*, 111 F. App'x. 978, 982 (10th Cir. 2004)) (subsequent citations omitted). Defendants' allegations in Counterclaim I do not specifically address these elements, and the Court declines to dig through the remainder of their pleadings to make this argument for them. Consequently, the Court will grant Plaintiffs' motion with respect to a claim for false advertising under § 1125(a)(1)(B).

### C.       Counterclaim II: Registered Trademark Infringement under 15 U.S.C. § 1114

In Counterclaim II, Dr. Rusch asserts a service-mark infringement claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114. (Answer & Countercl. ¶¶ 133–40.) The elements of an infringement claim under § 1114 are nearly identical to those under § 1125(a)(1)(A), "except that the registration of a mark serves as prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce . . . ." *1-800 Contacts*, 722 F.3d at 1238 (citing *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1484 (10th Cir. 1987); 15 U.S.C. § 1115(a) (2002)). As Plaintiffs only argue that this claim fails because Dr. Rusch has not sufficiently alleged that she owns the trademark, their motion fails.

### D.       Counterclaim III: Common Law Trademark Infringement

In Counterclaim III, Dr. Rusch brings a claim for common law trademark infringement. (Answer & Countercl. ¶¶ 141–49.) Plaintiffs argue that this cause of action has been extinguished. (Doc. 41 at 13–14 (citing *Guidance Endodontics*, 708 F. Spp. 2d at 1249–50).) In *Guidance Endodontics*, the Court observed that "the New Mexico Legislature has determined to extinguish

the common-law cause of action for trademark infringement" by passing the New Mexico Trademark Act, N.M. Stat. Ann. §§ 57-3B-1–17. 708 F. Spp. 2d at 1249–50. Defendants assert that this Court "should also recognize the common law trademark infringement counterclaim as a 'claim under the New Mexico Trademark Act.'"[4] (Doc. 49 at 7.) Defendants failed to cite the statute in this counterclaim, and the Court declines to read it into the counterclaim without a proper motion to amend. Plaintiffs' motion will be granted on this issue.

### E. Counterclaim IV: Direct Copyright Infringement under 17 U.S.C. § 501

Mr. Rusch asserts a claim for direct copyright infringement under 17 U.S.C. § 501. (Answer & Countercl. ¶¶ 150–57.) Plaintiffs first argue that he fails to state a claim because he has failed to demonstrate ownership over the copyright. (Doc. 41 at 14.) This argument is moot per the Court's decision above.

Plaintiffs also argue that the claim should fail because "Mr. Rusch has not complied with the requirements of Section 411 of the Copyright Act, 17 U.S.C. § 411(a), which provides that an infringement action may not be instituted until the subject work has been registered." (*Id.*) When Defendants first filed their Answer and Counterclaims on February 15, 2019, Mr. Rusch had not yet registered the copyright with the United States Copyright Office. The Supreme Court has recently held that "a copyright claimant may commence an infringement suit[] when the Copyright Office registers a copyright." *Fourth Estate Pub. Benefit Corp. v. Wall Street.com, LLC*, 139 S. Ct. 881, 886 (2019). Plaintiffs contend that Defendants' late registration on March 1, 2019, and subsequent filing of an Amended Answer and Counterclaims on April 4, 2019, did not cure the

---

[4] Defendants also state that "to the extent the Court considers Counterclaim III to be synonymous with Counterclaim VII, Defendants have no objection to the Counterclaims being consolidated under Counterclaim VII." (Doc. 49 at 7.) Defendants cite no explanation or authority for this proposition, and the Court declines to "consolidate" the two claims.

deficiency. (Doc. 41 at 14–15.) Plaintiffs do not, however, cite any authority to support their argument. Thus, the Court will deny their motion on this issue.

### F.     Counterclaim V: Contributory Copyright Infringement

Mr. Rusch next asserts a claim for contributory copyright infringement. (Answer & Countercl. ¶¶ 158–61.) "Contributory copyright infringement is derivative of direct copyright infringement. It occurs 'when the defendant causes or materially contributes to another's infringing activities and knows of the infringement.'" *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1146 (10th Cir. 2016) (quoting *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013)). Plaintiffs argue that Defendants fail to allege "who the third parties are who allegedly published the Royal Logo, what they published, when or where these third parties published the Royal Logo[,] or how [Plaintiffs] caused the third parties to infringe." (Doc. 41 at 15.) The Court agrees.

Defendants assert that "[e]ven where Plaintiffs did not directly copy the work, Plaintiffs had the opportunity to stop or limit the publication of the work. Plaintiffs knew, or should have known, that the work was being published to numerous third parties in furtherance of Plaintiffs' attempts to attract customers." (Answer & Countercl. ¶ 160.) Defendants make no attempt to identify who the third parties are or where they published. Instead, Defendants have simply made a threadbare recital of the elements of a contributory copyright infringement claim. Consequently, the Court will grant Plaintiffs' motion with respect to this issue.

### G.     Counterclaim VI: Removal or Alteration of Copyright Management Information under 17 U.S.C. § 1202

Mr. Rusch next alleges that Plaintiffs unlawfully removed or altered the copyright management information on the Royal Logo in violation of 17 U.S.C. § 1202(b). (*Id.* ¶¶ 162–65.) The relevant section provides:

> (b) Removal or alteration of copyright management information.--No person shall, without the authority of the copyright owner or the law--
>
>> (1) intentionally remove or alter any copyright management information,
>>
>> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>>
>> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).

Plaintiffs argue that Defendants "have not alleged any facts regarding what the content of the copyright management information was or whether there was any copyright management information conveyed in connection with the works in the first place . . . ." (Doc. 41 at 16.) Mr. Rusch alleged, however, that Plaintiffs "copied and distributed . . . Defendant's copyrighted work . . . without including Defendant's name or other identifying information, the title or other identifying information of [the] copyrighted work, or even the fact that [the] work is copyrighted, therefore seemingly attempting to pass off the work as Plaintiff's [sic] own." (Answer & Countercl. ¶ 163.) The Court finds that this allegation is sufficient to assert this claim and will deny Plaintiffs' motion on this issue.

### H. Counterclaim VII: False Advertising under New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1

Defendants allege that Plaintiffs violated § 57-12-1 by using the Royal Logo and passing it off as their own. (Answer & Countercl. ¶¶ 166–70.) Plaintiffs argue that because Defendants do not own the trademark, they have failed to state a claim under the New Mexico Unfair Practices Act. (Doc. 41 at 16–17.) Because the Court has already found this argument is without merit, it will deny Plaintiffs' motion on this issue.

## I. Counterclaim VIII: Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Defendants next assert that if the Court finds that the Partnership Agreement is enforceable, Plaintiffs have breached the contract and the covenant of good faith and fair dealing. (Answer & Countercl. ¶¶ 171–76.) Plaintiffs contend that this cause of action is "merely a formulaic statement that does not include the necessary allegations, such as what contract in particular was breached[,] how it was breached[,]" or how Defendants were injured. (Doc. 41 at 17.)

"Under New Mexico law, '"[t]he elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, and damages.'" *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1030 (D.N.M. 2013) (quoting *Abreu v. N.M. Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)). It is true that Defendants have given short shrift to the paragraphs laying out this cause of action. They merely state that Plaintiffs "failed to carry out their contractual obligations under the contract [and] Defendants have incurred substantial monetary costs at their own expense, namely, trademark renewal fees, professional fees, and other expenses." (Answer & Countercl. ¶¶ 174–75.) Defendants have not connected these statements to any alleged contractual obligation.

To state a breach of the implied covenant of good faith and fair dealing, Defendants must show "bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Anderson Living Tr.*, 952 F. Supp. 2d at 1031 (quoting *Sanders v. FedEx Ground Package Sys.*, 188 P.3d 1200, 1203 (N.M. 2008)). Defendants have not asserted factual allegations sufficient to state this cause of action. Accordingly, the Court will grant the motion with respect to Counterclaim VIII.

**J.      Counterclaim IX: Breach of Fiduciary Duty**

Defendants assert that Plaintiffs have breached their fiduciary duties to Defendants, "including the duties of full disclosure, loyalty, and faithfulness to the principals . . . by engaging in unlawful and self-dealing behaviors to the detriment of Defendants." (Answer & Countercl. ¶¶ 177–80.) Plaintiffs, who note that they "collectively owned a minority interest in" the business (Doc. 51 at 7), argue that Defendants recite mere formulaic statements without alleging the "facts necessary to state a claim for breach of fiduciary duty, including facts of a relationship from which [they] are bound to owe the fiduciary duty and how they breached such a duty." (Doc. 41 at 17 (citing *Sambhi v. Singh*, No. 09-CV-1053 MCA/RLP, 2010 WL 11440939, at *3 (D.N.M. Aug. 31, 2010)).) *See also Stralker v. Haynes*, No. 30,615, 2012 WL 5835417, at *2 (N.M. Ct. App. Oct. 30, 2012) ("New Mexico courts have recognized that a managing member of a limited liability company owes a fiduciary duty to other members") (citation omitted). The Court agrees.

 "A fiduciary duty exists 'in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence.'" *Sambhi*, 2010 WL 11440939, at *3 (quoting *Branch v. Chamisa Dev. Corp. Ltd.*, 223 P.3d 942, 951 (N.M. Ct. App. 2009)). "Whether such a duty exists 'turns on whether the relationship between the parties is one of trust and confidence.'" *Id.* (quoting *Branch*, 223 P.3d at 951). Because Defendants have failed to define the relationship from which the fiduciary duty springs, the Court will grant Plaintiffs' motion on this counterclaim.

**K.      Counterclaim X: Unjust Enrichment**

Defendants next assert that "Plaintiffs were unjustly enriched when they withdrew corporate funds and shareholder contributions from the corporate bank account into personal bank accounts[,] . . . when they utilized intellectual property rights that did not belong to them[,]" and

"when they converted corporate property and stock interests owned by Defendants." (Answer &
Countercl. ¶¶ 181–86.) Plaintiffs first argue that Defendants "have not alleged facts suggesting
they were entitled to any of the funds." (Doc. 41 at 18.) Even if this were true, Defendants have,
however, demonstrated that they were the owners of the copyright and trademark at issue. Thus,
this argument fails.

Plaintiffs also contend that Defendants may not state a claim for unjust enrichment when
they have alleged that a contract existed. (Doc. 41 at 18.) Defendants respond that this claim is
pleaded in the alternative, because they have argued that the contract is unenforceable. (Doc. 49 at
12.) It is true that "[c]ourts interpreting New Mexico law have cautioned that courts should not
'resort to the doctrine of unjust enrichment to override a contractual provision.'" *Qwest Corp. v.
City of Santa Fe*, No. 10-CV-0617 RB/KBM, 2013 WL 12241274, at *12 (D.N.M. Feb. 8, 2013),
*order clarified*, No. 10-CV-0617 RB/KBM, 2013 WL 12241269 (D.N.M. Apr. 5, 2013) (quoting
*Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005)). "However,
unjust enrichment is widely accepted as an alternative theory of recovery, should the factfinder
determine that no contract between the parties exists." *Id.* (citing *Starko, Inc. v. Presbyterian
Health Plan, Inc.*, 276 P.3d 252, 278 (N.M. Ct. App. 2011), *overruled on other grounds*, 333 P.3d
941 (N.M. 2014)). "This is illustrated by the fact that New Mexico's state rules explicitly allow
for alternative pleading of civil claims." *Id.* (citation omitted); *see also* N.M. R. CIV. P. 1-
008(E)(2). Defendants have asserted their claim for unjust enrichment in the alternative and may
not recover doubly if the contract is found to be enforceable. *See Qwest Corp.*, 2013 WL 12241274,
at *12. Thus, the Court will deny Plaintiffs' motion on this issue.

## L.     Counterclaim XI: Fraud in the Inducement/Common Law Fraud

Defendants next assert claims for fraud in the inducement and common law fraud. (Answer

& Countercl. ¶¶ 187–195.) "In New Mexico, an action for fraud or fraudulent inducement occurs when 'a false representation was made, either knowingly or recklessly, with the intent to deceive, for the purpose of inducing the other party to act, and that the other party did rely and act on it to his own injury.'" *ACC Consultants, Inc. v. Logistics Health, Inc.*, No. CIV. 09-1145 JP/RHS, 2011 WL 5212262, at *8 (D.N.M. Feb. 25, 2011) (quoting *Wirth v. Commercial Res., Inc.*, 630 P.2d 292, 297 (N.M. Ct. App. 1981)). A litigant "must meet more stringent standards" to plead a claim for fraud. *S2 Automation LLC v. Micron Tech., Inc.*, 281 F.R.D. 487, 493 (D.N.M. 2012) (citing Fed. R. Civ. P. 9(b)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* (quoting Fed. R. Civ. P. 9(b)). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, 232 F.3d 902, at *3 (10th Cir. 2000) (quotation and citation omitted).

Defendants allege that Plaintiffs fraudulently induced them to enter into a business relationship by representing that Plaintiffs "were (a) bona-fide, good-faith investors, (b) competent to provide necessary investments, and (c) competent to perform their fiduciary duties . . . ." (Answer & Countercl. ¶ 188.) Plaintiffs knew the representations were false and Defendants relied on them. (*Id.* ¶¶ 189–192.) Moreover, Mr. Strobel "engaged in numerous fraudulent transactions, including fraudulently creating a separate limited liability company in New Mexico, without authority of the defendants, withholding important business property, such as financial books, . . . and transferring funds from jointly held accounts to his own personal account." (*Id.* ¶ 194.)

Plaintiffs argue the allegations are insufficient to state a claim for fraud because "[t]hey do not adequately state the when, where[,] and how of such acts, what they did or did not do in reliance

on any conscious misrepresentation, or how that caused them injury . . . ." (Doc. 41 at 18.) Rather than specifically set out how their pleadings satisfy Rule 9, Defendants merely list a string of paragraphs and state that "the Counterclaims have numerous, specific factual allegations about likely fraud." (Doc. 49 at 12 (citing Answer & Countercl. ¶¶ 62–65, 71–80, 87–88, 98–99, 104–05, 188–94).)

The Court finds that Defendants' allegations that Plaintiffs fraudulently represented they "were (a) bona-fide, good-faith investors, (b) competent to provide necessary investments, and (c) competent to perform their fiduciary duties" are too general to satisfy Rule 9(b)'s heightened pleading requirements. These allegations do not "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The allegations concerning Mr. Strobel are more specific. Defendants allege that on August 19 and December 21, 2013, Mr. Strobel emailed and falsely confirmed to the other members that he had finalized the transfer of the trademark to the business. (Answer & Countercl. ¶¶ 62–65.) Defendants do not go on, however, to allege that Mr. Strobel fraudulently misrepresented this fact "for the purpose of inducing [Defendants] to act, and that [Defendants] did rely and act on it to [their] own injury." *ACC Consultants*, 2011 WL 5212262, at *8 (quotation omitted). The same can be said of Defendants' allegations that Mr. Strobel changed CPAs, dissolved a subsidiary, used UNC-FL's bank account for UNC-NM's financial activities, withheld financial books, cancelled Plaintiffs' participation in a general meeting, eliminated Mr. Rusch's "Income Shares," or transferred funds to a personal account. (*See* Answer & Countercl. ¶¶ 71–80, 98–99, 104–09, 194.)

Defendants next allege that on "March 23, 2014, Mr. Strobel asked Mr. Rusch to dissolve UNC-FL" so that he could fraudulently create a separate limited liability company in New Mexico. (*Id.* ¶ 66.) Specifically, Defendants assert that "Mr. Rusch asked Mr. Strobel whether Mr. Strobel

had complied with all the legal requirements for the dissolution, relocation, and merger of UNC-FL and whether Mr. Fischer had given written consent to the dissolution and merger. Mr. Strobel confirmed that such conditions had been met." (*Id.* ¶ 67.) Defendants do not specify, however, how these actions created reliance or injury. (*See id.* ¶¶ 67–71, 194.)

Finally, Defendants allege that Mr. Strobel fraudulently told Defendants that UNC-FL did not have money to pay for the trademark renewal. (*Id.* ¶¶ 87–88.) While it is clear that the statement induced Defendants to personally pay for the renewal, Defendants do not explain how they have been injured, since the registration record reflects that Dr. Rusch still owns the trademark.

In sum, Defendants have failed to meet the heightened pleading requirement to show fraud, and the Court will grant Plaintiffs' motion on this issue.

## M.  Counterclaim XII: Conversion

Defendants next assert that Plaintiffs "converted money[] and other property, including intangible property . . . ." (*Id.* ¶¶ 196–98.) Plaintiffs argue that the claim is not sufficiently specific, in that it does not identify the property converted. (Doc. 41 at 19.) Moreover, Plaintiffs contend, all money and property were assets of the business, and Defendants cannot establish ownership of the property. (*Id.*) Finally, Plaintiffs argue the tort claim is precluded by the earlier contract claim. (*See id.* (citing *Anderson Living Tr.*, 952 F. Supp. 2d at 1042–45).) Defendants respond that the property refers to the intellectual property—the trademark and copyright. (Doc. 49 at 13.) The Court finds that Defendants have sufficiently pleaded a claim for conversion. As with the claim for unjust enrichment, Defendants may plead this tort claim in the alternative but may not recover doubly if the contract is found to be enforceable. *See Qwest Corp.*, 2013 WL 12241274, at *12.

## N.  Counterclaim XIII: Negligence

Defendants next assert a claim for negligence against all Plaintiffs. (Answer & Countercl.

¶¶ 199–203.) "Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages." *Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1323, 1400 (D.N.M. 2014) (citation omitted).

Defendants assert that "Plaintiffs owed Defendants a duty, independent of any contractual duties or obligations, to exercise due care in the operations of the business." (Answer & Countercl. ¶ 200.) They further assert that "Plaintiffs failed to exercise due care" in "the handling and filing of corporate documents, maintenance of financial records of the businesses, attending notice meetings, and improperly transferring funds to which Plaintiffs had no legal rights." (Answer & Countercl. ¶¶ 200–01.) Plaintiffs contend that Defendants have failed to "allege a standard of care that governs the conduct of members of limited liability companies, which in New Mexico would require 'gross negligence' or 'willful misconduct' to be actionable." (Doc. 41 at 20 (citing N.M. Stat. Ann. § 53-19-16(B); *Lilak v. Astrazenca Pharm.-U.S., Inc.*, Civ. No. 12-cv-0031-PAB-MJW, 2012 WL 444347, at *3 (D. Colo. July 23, 2012)).)

Defendants' response is conclusory and vague, but they seem to argue that they have alleged facts sufficient to demonstrate a claim for gross negligence. (*See* Doc. 49 at 13.) Again, they string cite a variety of paragraphs from their Answer and Counterclaims, but they do not discuss the elements of a gross negligence claim or explain how their factual allegations support such a claim. (*Id.* (citing Answer 7 Countercl. ¶¶ 62–65, 71–80, 87–88, 98–99, 104–05, 188–94).) Defendants also assert that "the Counterclaims refer to numerous actions that were undertaken well before any relevant business entity was ever formed." (*Id.*) Yet, Defendants do not specifically refer to any such actions in this claim. (*See* Answer & Countercl. ¶¶ 199–203.) The Court will not construct arguments for them and will grant Plaintiffs' motion with respect to any claim for gross

negligence or negligence.

**O.  Counterclaim XV: Declaratory Judgment/Injunctive Relief under 28 U.S.C. § 2201**

In their last claim, Defendants seek a declaration that Dr. Rusch owns the trademark rights at issue, Mr. Rusch owns the copyright, and Plaintiffs have no rights to either. (*Id.* ¶¶ 204–09.) They ask the Court to declare that UNC-NM has no rights "related to this matter, that the entity is distinct and separate from [UNC-FL,] and that any business relationship agreed upon by the parties, to the extent that any existed, related exclusively to UNC-FL . . . ." (*Id.* ¶ 208.) Finally, "Defendants seek a declaration that no Plaintiff has any personal rights to any property of UNC-FL, other than the possible interests each party holds in their respective shares of the legal entity." (*Id.* ¶ 209.)

Plaintiffs again argue that the claim should be dismissed because Defendants have no ownership rights in the trademark or copyright. (Doc. 41 at 20.) This argument is moot and the Court will deny the motion on this issue.

**IV.  The Court will grant in part Plaintiffs' motion to strike.**

Plaintiffs move to strike 17 of Defendants' 22 affirmative defenses, mainly on the basis that "no facts alleged in the [Answer and Counterclaims] provide a basis for or even a bridge to the affirmative defenses . . . ." (Doc. 42 at 4.) This argument has no merit, as the Court is not "convinced that there are no questions of fact" in this lawsuit. *See Wells*, 982 F. Supp. 2d at 1263 (quotation omitted). "This District does not require factual specificity in affirmative defenses, and has declined to extend the heightened pleading standard of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) to affirmative defenses." *Sartori v. Steider & Assocs., P.C.*, No. 1:15-CV-00991-JCH-LF, 2017 WL 3602029, at *1 (D.N.M. Jan. 19, 2017),

*R&R adopted*, No. 1:15-CV-00991-JCH-LF, 2017 WL 4542882 (D.N.M. Feb. 8, 2017); *see also Wells*, 982 F. Supp. 2d at 1264. Accordingly, the Court finds that Defendants' First (Unclean Hands), Second (Statute of Frauds), Third (Legal Justification), Fourth (Misrepresentation),[5] Eighth (Express Consent), Ninth (Implied Consent), Twelfth (Implied Release), Thirteenth (Equitable Release), Fourteenth (Necessity), Fifteenth (Business Necessity), and Twentieth (Mistake) Affirmative Defenses cannot be struck on the basis that Defendants have not pleaded sufficient facts in support of the defenses. (*See* Doc. 42 at 5–10 (arguing that Defendants failed to state facts in support of these defenses).)

Plaintiffs assert that seven of the alleged defenses are not actually affirmative defenses and have been misclassified as such. Plaintiffs argue that three of these—the Sixth (Anticipatory Breach), Eighteenth (Failure to Act in a Commercially Reasonable Manner), and Twenty-Second (Indemnification)—are more appropriately characterized as causes of action, rather than as affirmative defenses. (Doc. 42 at 7, 9–11.) Defendants disagreed without citing authority. (*See* Doc. 46 at 8, 10–11.) The Federal Rules provide that "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2). The Court will strike the Sixth, Eighteenth, and Twenty-Second Affirmative Defenses. Should Defendants wish to add Anticipatory Breach, Failure to Act in a Commercially Reasonable Manner, and/or Indemnification as counterclaims, they must file a motion to amend as described below and properly plead these three causes of action as counterclaims.

---

[5] While the Court finds in this Memorandum Opinion and Order that Defendants failed to allege facts sufficient to show fraud, it made no such finding about misrepresentation in general. Thus, to the extent that Defendants' affirmative defense is based on a showing of fraud, the Court will grant Plaintiffs' motion to strike. Otherwise, Defendants' Fourth Affirmative Defense will remain.

Plaintiffs argue that Defendants' Third (Legal Justification), Thirteenth (Equitable Release), Nineteenth (Comparative negligence), and Twenty-First (Wrong Party) defenses are not actually affirmative defenses and should be stricken. (Doc. 42 at 6, 8–10.) Plaintiffs cite to a case from the Eastern District of California to support their contention that comparative negligence is not a defense, but they cite no other authority in support of these arguments. (*Id.* at 9 (citing *Mayfield v. Cty. of Merced*, No. 1:13-CV-1619-LJO-BAM, 2015 WL 791309, at *4 (E.D. Cal. Feb. 25, 2015)).) The case Plaintiffs rely on is not binding. Moreover, "New Mexico courts allow parties to raise comparative negligence as an affirmative defense . . . ." *Lopez v. Am. Baler Co.*, No. CIV 11-0227 JB/GBW, 2013 WL 4782155, at *17 (D.N.M. Aug. 12, 2013) (citations omitted); *see also Safeway Inc. v. Rooter 2000 Plumbing & Drain SSS*, 368 P.3d 389, 397 (N.M. 2016); *Heath v. La Mariana Apartment*s, 151 P.3d 903, 910–11 (N.M. Ct. App. 2006). As Plaintiffs make no argument that Defendants' assertion of these defenses will prejudice Plaintiffs, and they have "not demonstrated that the affirmative defenses cannot succeed under any circumstances[,]" the Court will deny the motion on these bases. *See Salazar v. Flavin*, No. CIV 14-0515 LH/KBM, 2015 WL 13662588, at *4 (D.N.M. June 4, 2015).

Finally, Plaintiffs contend that Defendants' Sixteenth Affirmative Defense (Misuse of Product) is inapplicable in this lawsuit, because it is only recognized as a defense in product liability cases. (Doc. 42 at 9.) While Plaintiffs failed to cite to any New Mexico case in support of this proposition, the Court conducted its own search on the topic and found no case in New Mexico or in this district applying a "misuse of product" defense outside of a products liability lawsuit. *See*, *e.g.*, *Marchese v. Warner Comm'ns, Inc.*, 670 P.2d 113, 116 (N.M. Ct. App. 1983). More importantly, Defendants failed to identify any relevant authority to support applying the defense in this context. (*See* Doc. 46 at 6–7.) Thus, because it appears that this defense is immaterial to

this lawsuit, the Court will strike it.

**V.      Conclusion**

For the reasons discussed herein, the Court **grants in part** Plaintiffs' motion to dismiss and **dismisses** the following counterclaims:

(1) Counterclaim I: False Advertising under 15 U.S.C. § 1125(a)(1)(B);

(2) Counterclaim III: Common Law Trademark Infringement;

(3) Counterclaim V: Contributory Copyright Infringement;

(4) Counterclaim VIII: Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing;

(5) Counterclaim IX: Breach of Fiduciary Duty;

(6) Counterclaim XI: Fraud in the Inducement/Common Law Fraud; and

(7) Counterclaim XIII: Negligence.

The Court **denies in part** Plaintiffs' motion and finds the following counterclaims remain:

(1) Counterclaim I: False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A);

(2) Counterclaim II: Service-Mark Infringement under 15 U.S.C. § 1114;

(3) Counterclaim IV: Direct Copyright Infringement under 17 U.S.C. § 501;

(4) Counterclaim VI: Removal or Alteration of Copyright Management Information under 17 U.S.C. § 1202(b);

(5) Counterclaim VII: False Advertising under New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1;

(6) Counterclaim X: Unjust Enrichment;

(7) Counterclaim XII: Conversion; and

(8) Counterclaim XV: Declaratory Judgment/Injunctive Relief under 28 U.S.C. § 2201.

The Court will also **grant in part** Plaintiffs' motion to strike and will **strike** Defendants' Fourth Affirmative Defense (Misrepresentation) to the extent it is based on fraud, as well as the Sixth (Anticipatory Breach), Sixteenth (Misuse of Product), Eighteenth (Failure to Act in a Commercially Reasonable Manner), and Twenty-Second (Indemnification) Affirmative Defenses.

Should Defendants seek to file a motion to amend, such motion shall be filed no later than **Monday, January 13, 2020**.

**THEREFORE**,

**IT IS ORDERED** that Plaintiffs'/Counterclaim Defendants' Motion to Dismiss Defendants'/Counterclaim Plaintiffs' Counterclaims, or in the Alternative for Summary Judgement (Doc. 41) is **GRANTED IN PART** and **DENIED IN PART** as described herein;

**IT IS FURTHER ORDERED** that Plaintiffs and Counterclaim Defendants' Motion to Strike Insufficient Defenses (Doc. 42) is **GRANTED IN PART** and **DENIED IN PART** as described herein; and

**IT IS FURTHER ORDERED** that if Defendants choose to file a motion to amend, such motion shall be filed no later than **Monday, January 13, 2020**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Fri Jan 3 04:14:25 EST 2020*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | CORDIALS V.I.P. DRINKS |
| **Goods and Services** | IC 032. US 045 046 048. G & S: Beers; mineral and aerated waters and other non-alcoholic drinks, namely, colas, non-alcoholic cocktails, lemonades, fruit drinks and fruit juices; syrups and other preparations for making beverages, namely, fruit drinks, fruit juices and fruit beverages, namely, fruit sodas<br><br>IC 033. US 047 049. G & S: Alcoholic beverages, except beers, namely, liqueurs, rum, brandy, vodka, gin, and tequila<br><br>IC 043. US 100 101. G & S: Services for providing food and drink; temporary accommodation |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 24.09.07 - Advertising, banners ; Banners<br>24.11.01 - Crowns closed at the top<br>26.05.21 - Triangles that are completely or partially shaded<br>26.11.21 - Rectangles that are completely or partially shaded<br>26.11.25 - Rectangles with one or more curved sides<br>26.17.25 - Other lines, bands or bars |
| **Trademark Search Facility Classification Code** | ART-24.09 Flags, banners<br>ART-24.11 Crowns<br>LETTER-3-OR-MORE VIP Combination of three or more letters as part of the mark<br>NOTATION-SYMBOLS Notation Symbols such as Non-Latin characters,punctuation and mathematical signs,zodiac signs,prescription marks<br>SHAPES-BAR-BANDS Designs with bar, bands or lines<br>SHAPES-COLORS-3-OR-MORE Design listing or lined for three or more colors<br>SHAPES-GEOMETRIC Geometric figures and solids including squares, rectangles, quadrilaterals and polygons<br>SHAPES-MISC Miscellaneous shaped designs<br>SHAPES-TRIANGLES Triangular shaped designs and marks including incomplete triangles |
| **Serial Number** | 79042031 |
| **Filing Date** | April 30, 2007 |
| **Current Basis** | 66A |
| **Original Filing Basis** | 66A |
| **Published for Opposition** | April 21, 2009 |
| **Registration Number** | 3651220 |
| **International Registration Number** | 0933137 |
| **Registration Date** | July 7, 2009 |
| **Owner** | (REGISTRANT) V.I.P. Drinks GmbH Private limited company AUSTRIA Regattaweg 8 Wien AUSTRIA A1220<br><br>(LAST LISTED OWNER) **Mabel Rusch** DBA V.I.P. Drinks Bottling LLC INDIVIDUAL FED REP GERMANY 2624 SW 4th Avenue Cape Coral UNITED STATES 33914 |
| **Attorney of Record** | Eric Menhart |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CORDIALS" AND "DRINKS" APART FROM THE MARK AS SHOWN |
| **Description of Mark** | The color(s) blue, red and white is/are claimed as a feature of the mark. The mark consists of words "CORDIALS V.I.P. DRINKS" as |

represented. The color white represents the wording "cordials" and the outside lining of the rectangular design, background color of the crown, and the background of the design. The color blue represents the background color of the rectangle and the crown, along with the curved like designs behind the rectangle. The color red represents the triangle behind the wording "Cordials" and red in the crown.

| | |
|---|---|
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECTION 71 |
| **Live/Dead Indicator** | **LIVE** |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY