IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VOLKER STROBEL, HEIKE
STROBEL, and HANS BAUR,
in their individual capacities and on
behalf of UNC Holding LLC and
V.I.P. DRINKS BOTTING LLC,

        Plaintiffs,

v.                                        No. CIV 18-0656 RB/JFR

UWE RUSCH and DR. MABEL
RUSCH,

        Defendants.

## MEMORANDUM OPINION AND ORDER

      After the Court issued a Memorandum Opinion and Order on January 3, 2020, it gave

Defendants Uwe Rusch and Dr. Mabel Rusch (Defendants or Rusch Parties) ten days to amend

their Answer, which included several counterclaims. Before the Court now is the Rusch Parties'

Motion to Amend. (Doc. 79.) After considering the changes and the briefing, the Court will grant

the Motion in part and deny it in part.

## I.    Background[1]

      Uwe Rusch developed a line of cordials in 1998, registering the drink logo with the World

Intellectual Property Organization. (Doc. 79-2 ¶¶ 11–14; 24–25.) Once the Rusch Parties moved

to Florida to establish their business in the United States, they met Plaintiffs Volker and Heike

Strobel (Plaintiffs or Strobel Parties) and developed a business relationship. (*Id.* ¶¶ 30–35; 55–58.)

They eventually formed UNC Holding LLC (UNC-FL) (*Id.* ¶ 54), and the Partnership Agreement

provided that Dr. Rusch would convey to the business her trademark rights (*see* Doc. 41-A at 2).

---

[1] In a previous Memorandum Opinion and Order, the Court provided an extensive rendering of the facts of this case.
(Doc. 75.)

In May 2013, Dr. Rusch executed two documents that would initiate the transfer. (*Id.* ¶¶ 60–63.) Strobel was responsible for submitting the documents and the appropriate payments to the correct authorities but never finalized the transfer. (*Id.* ¶¶ 61–70.)

In March 2014, Strobel asked Rusch to dissolve UNC-FL effective April 18, 2014, giving Mr. Strobel time to set up UNC-NM. (*Id.* ¶ 71.) Disagreement arose about how the parties would reestablish the business in New Mexico (UNC-NM), and Rusch alleges that Strobel took actions against the partnership. (*Id.* ¶¶ 73–78.) Next, the parties disputed the rightful owners of the trademark because Strobel never transferred the rights in accordance with the Agreement. (*Id.* ¶¶ 87–92.) In February 2018, Strobel was dismissed as CEO of the independent subsidiary. (*Id.* ¶ 106.) Nevertheless, Strobel still had control of UNC-NM's bank account and proceeded to transfer funds to his personal account. (*Id.* ¶ 111.) On March 1, 2019, Defendants registered the Royal Logo with the United States Copyright Office. (*Id.* ¶ 120; *see also* Doc. 40-1.)

Plaintiffs filed this lawsuit on July 10, 2018, contending that Defendants infringed on UNC-NM's rights in the trademark and caused damage to Plaintiffs. (See Docs. 1; 62 (Am. Compl.).) Defendants assert numerous affirmative defenses and counterclaims. (Docs. 40; 79-2.) On January 3, 2020, the Court issued a Memorandum Opinion and Order that dismissed several counterclaims, but allowed Defendants until January 13, 2020 to file a Motion to Amend the Answer. (Doc. 75.) On January 13, 2020, the Rusch Parties filed their Motion to Amend the Answer (Doc. 79) with an attached Amended Answer (Doc. 79-2). The Strobel Parties filed a Response, which is treated as a Motion to Dismiss the amended counterclaims. (Doc. 85.) Two Motions to Extend are also before the Court. (Docs. 101; 102.)

## II.    Legal Standards

### a.   Motion to Amend Standard

The Federal Rules of Civil Procedure state that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Yet the court may deny amendments that are unduly delayed, unduly prejudicial, futile, or sought in bad faith. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Typically, this occurs when the nonmoving party is unfairly affected by the amendments in the Answer. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006). A district court is justified in denying a motion to amend as futile, however, if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). The same standard under Federal Rule 12(b)(6) applies to new counterclaims posed in the amended Answer.

### b.   Motion to Dismiss Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the [counterclaim] as true and must construe them in the light most favorable to the [counterclaimant]." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the counterclaim does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III.    Discussion

Given that Plaintiffs only take issue with certain changes to the Defendants' Amended Answer, the Court will grant the other changes and focus on the contested ones. Specifically, Plaintiffs address the Defendants' amendments to the following claims: False Advertising under the Lanham Act (Counterclaim I); trademark infringement under the New Mexico Trademark Act (Counterclaim III); Unfair Protection Act (Counterclaim VI); breach of contract (Counterclaim VII); anticipatory breach (Counterclaim VIII); and indemnification (Counterclaim IX).

### a.    Defendants have not offered sufficient factual support to proceed with the false advertising claim (Counterclaim I) under section 1125(a)(1)(B) of the Lanham Act.

First, Defendants amend their Answer to include claims brought under section 1125(a)(1)(B) of the Lanham Act. (Doc. 79-2 ¶¶ 136–42.) To demonstrate a claim under section 1125(a)(1)(B), Defendants must show:

> (i) that [Plaintiffs] made a false or misleading statement of fact in a commercial advertisement about [their] own or another's product; (ii) the misrepresentation is material, in that it is likely to influence the purchasing decision; (iii) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (iv) [Plaintiffs] placed the false or misleading statement in interstate commerce; and (v) the Defendants have been or are likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with [their] products.

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1239 (D.N.M. 2010) (citing *Zoller Labs., LLC v. NBTY, Inc.*, 111 F. App'x. 978, 982 (10th Cir. 2004)) (subsequent citations omitted).

In the January Opinion, the Court held that Defendants' Answer did not specifically address the elements of section 1125(a)(1)(B). Now, Defendants' amended Answer attempts to fit the claims into this framework. But again, they fail to state a claim upon which relief can be granted because the changes are conclusory in nature and plead no actual facts. For instance, the Rusch

Parties state that "the goods were from a source that was not Defendants/Counter-Plaintiffs." (Doc. 79-2 ¶ 136.) They claim that it was material because "consumers make purchasing decisions based on source of products [sic]." (*Id.* ¶ 137.) Further, Defendants state that "false and misleading labels were placed in interstate commerce" (*id.* ¶ 139), and customers are "likely to be injured as a result . . . ." (*id.* ¶ 140.)

While the Defendants' new Answer discusses the elements of section 1125(a)(1)(B), none of this new language includes specific facts to make out a claim and amounts to nothing more than conclusory allegations. Plaintiffs contend that "the Rusch Parties have alleged neither the factual basis for their allegations, or provided information on which their beliefs were formed; and have not alleged any basis for finding that the information they need was uniquely within the knowledge of the Strobel Parties." (Doc. 85 at 5.) The Court agrees. Therefore, without sufficient factual support and a clearer picture of how these false advertising allegations fit into the framework, the Court has no choice but to dismiss Counterclaim I.

### b. Defendants do not have a cause of action under the New Mexico Trademark Act (Counterclaim III).

Defendants' next address changes related to the trademark infringement claim brought under the New Mexico Trademark Act. (Doc. 79-2 ¶¶ 156–61.) The statute states that "[a]ny person shall be liable in a civil action by the registrant." N.M. Stat. Ann. § 57-3B-14. Under this Act, a registrant "includes the person to whom the registration of a mark under the Trademark Act is issued as well as the legal representative, successors or assigns of the person." *Id.* § 57-3B-3(E).

Previously, Defendants failed to bring this claim properly under New Mexico law, instead pursuing a common law infringement claim. (Doc. 75 at 10–11.) In their Amended Answer, Defendants more specifically tailor their statements to fit within the New Mexico Trademark Act. However, they make no claim that they are registrants under this Act. Defendants hold that "a

claim may be pursued under the statute 'whether registered or not.'" (Doc. 87 at 4.) They base this argument on language in the definition section of the statute holding that a "'mark' includes any trademark or service mark entitled to registration under the Trademark Act whether registered or not." N.M. Stat. Ann. § 57-3B-3(C). Yet this definition only describes marks generically discussed throughout the statute. Section 57-3B-14 on the other hand specifically stipulates that causes of action are limited to registrants. Defendants admit that the trademark is not formally registered in New Mexico (Doc. 87 at 4); thus, they do not have a cause of action. Defendants ask that if the Court adopt this stance, that it grant them leave to register the trademark in New Mexico. (*Id.*) The Court has limited jurisdiction, and it is not in the business of gaming the New Mexico statutory framework so that additional state claims can make their way into federal court. As a result, the Court will dismiss Counterclaim III.

### c. The Court will allow the Unfair Protection Act claim (Counterclaim VI) to proceed.

Defendants allege that Plaintiffs violated section 57-12-1 by using the Royal Logo and passing it off as their own. (Doc. 79-2 ¶¶ 179–83.) In the January Opinion, the Court allowed the counterclaim related to the New Mexico Unfair Practices Act to proceed. (Doc. 75 at 24.) The Court will not entertain Plaintiffs' second attempt at this argument. Defendants made no changes to the Answer related to this counterclaim, so the Court will allow it to proceed.

### d. Defendants have provided sufficient factual support to make out a breach of contract claim, but not a covenant of good faith and fair dealing claim (Counterclaim VII).

Defendants next amend their Answer to include several new paragraphs related to the breach of contract counterclaims. (Doc. 79-2 ¶¶ 184–209.) "Under New Mexico law, '[t]he elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, and damages.'" *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979,

1030 (D.N.M. 2013) (quoting *Abreu v. N.M. Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)).

Where the previous Amended Answer (Doc. 40) only listed six paragraphs describing the basis for the contractual claims, the new Amended Answer (Doc. 79-2) expands Defendants' arguments, providing more detail to survive Plaintiffs' Motion to Dismiss (Doc. 85 at 8). Plaintiffs claim that Defendants have not pleaded sufficient facts to form a contract and show how the Strobel Parties broke the terms of the deal. (*Id.*) In the January Opinion, the Court took judicial notice of the Partnership Agreement, and it is now the basis for this claim. (Doc. 75 at 5.)

Here, Defendants allege that the Partnership Agreement obligated Plaintiffs to perform certain actions. (Doc. 79-2 ¶¶ 186–87.) The original Amended Answer simply stated that Plaintiffs failed to carry out the terms of this deal. (Doc. 40 ¶¶ 171–76.) Such a statement is conclusory and requires supporting facts to withstand a motion to dismiss. With the new Amended Answer, however, Defendants assert various ways that the Agreement terms were violated. Defendants describe how the Agreement required Plaintiffs to transfer the trademark. (Doc. 79-2 ¶ 192–94.) Specifically, the amended Answer reads: "Strobel never transferred the trademark, and the transfer was not 'initiated immediately' as the Agreement required." (*Id.* ¶ 198.) Yet Plaintiffs believe that the Agreement is clear and not at issue, so only some outside oral contract could have bound Plaintiffs to transfer the rights. However, the Agreement reads that the "transfer of these ownership rights will be initiated immediately after the signing of this agreement." (Doc. 18-1 at 20.) Defendants focus exclusively on this language, not some outside oral contract.

Simply, the Rusch Parties claim that the written Agreement required the transfer of the trademark immediately, and they allege that no transfer occurred. This claim fits squarely within the breach of contract framework. Thus, the Amended Answer supplies sufficient facts to make

7

out this claim. And whether evidence supports one interpretation of the Partnership Agreement over another is a decision to be made later in the path of litigation. *See Randles v. Hanson*, 258 P.3d 1154, 1162 (N.M. Ct. App. 2011).

With regard to the breach of covenant of good faith and fair dealing, however, Defendants have not pleaded sufficient facts to succeed on this issue. To make out this claim, Defendants must show "bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Anderson Living Tr.*, 952 F. Supp. 2d at 1031 (quoting *Sanders v. FedEx Ground Package Sys.*, 188 P.3d 1200, 1203 (N.M. 2008)). Defendants have not asserted factual allegations sufficient to state this cause of action. While they included several new paragraphs in the Amended Answer, they are all conclusory. (Doc. 79-2 ¶ 203–09.) Accordingly, the Court will grant the Motion to Amend with respect to the contract claim but not the good faith and fair dealing claim.

### e. Defendants mischaracterize the anticipatory repudiation claim (Counterclaim VIII) and do not provide factual support to survive the Motion to Dismiss.

In accordance with the Court's previous Opinion, Defendants converted their anticipatory repudiation affirmative defense into a counterclaim. (Doc. 79-2 ¶¶ 210–15.) To make out an anticipatory repudiation claim, Defendants need to show that Plaintiffs provided a "distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement." *Hoggard v. City of Carlsbad*, 909 P.2d 726, 728 (N.M. Ct. App. 1996) (quoting *Viramontes v. Fox*, 335 P.2d 1071, 1075 (N.M. 1959)). Unclear or indefinite statements would not constitute such a repudiation. *Id.*

Defendants first argue that a series of inactions constituted a repudiation of the Agreement. (Doc. 79-2 ¶ 212.) Specifically, they state that Plaintiffs "(a) failed to transfer the intellectual property rights, (b) failed to perform corporate rights and responsibilities, (c) failed to properly

account for funds owned by the entity, (d) failed to honestly communicate the corporate ongoings, (e) failed to undertake corporate meetings, and more." (*Id.*) These claims, however, do not amount to an "unequivocal" repudiation of the Agreement, merely an implied repudiation.

Next, Defendants state that Plaintiffs "expressly" repudiated the Agreement in a letter that "made it clear that the business relationship was broken, and that damages in excess of $350,000 were being claimed by Plaintiffs as against Defendants." (*Id.* ¶ 213.) Yet Plaintiffs claim that this letter was issued only to tell Defendants that they breached the Partnership Agreement, and the "mere fact that a party alleges a breach by another is not a repudiation of the agreement." (Doc. 85 at 13.) The Court agrees. Plaintiffs attempted to enforce the already existent Agreement and claim damages for Defendants' violations. Anticipatory repudiation claims are meant to justify the nonperformance of a contract condition. *Gilmore v. Duderstadt*, 961 P.2d 175, 179 (N.M. Ct. App. 1998). Instead, Defendants appear to be relitigating their previously described breach of contract claims, and this is not how anticipatory repudiation claims are to be employed. As a result, the Court will dismiss the Rusch Parties' anticipatory repudiation counterclaim.

### f. Defendants have not pleaded sufficient facts to make out the indemnification claim (Counterclaim IX).

Finally, the Rusch Parties convert their indemnification affirmative defense into a counterclaim. (Doc. 79-2 ¶ 216–21.) Indemnification takes a variety of forms in New Mexico Law. There is common law indemnification, which allows for reimbursement when a party has derivative liability for the wrongdoing of another. *Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS*, 368 P.3d 389, 398 (N.M. 2016). There is also contractual indemnification, which involves

the right of reimbursement based on a contractual duty, when one is not the active wrongdoer. *N.M. Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*, 198 P.3d 342, 349 (N.M. 2008).

The Amended Answer appears to discuss, in loose terms, some forms of derivative liability, but the discussion amounts to nothing beyond conclusory claims lacking factual support. (Doc. 79-2 ¶¶ 216–21.) Moreover, nothing in the Partnership Agreement discusses any form of contractual indemnification. In sum, this is an inappropriate claim to bring forward given the underlying facts. Thus, the Court will dismiss the indemnification counterclaim in the Amended Answer.

## IV.   Motions to Extend

Defendants, citing the pendency of their motion to amend, seek an extension to the pretrial motion deadline from June 15, 2020, through June 29, 2020. (Doc. 101.) Plaintiffs, citing no reason for their request, seek to modify the deadline for motions in limine to "14 days prior to the date to be set for the commencement of trial, with responses due 5 days thereafter, without replies." (Doc. 102.)

In its Order Re-Setting Pretrial Conferences and Jury Selection and Trial (Doc. 77), which followed "the parties' *third* motion to extend scheduling order dates" (*see* Doc. 76 at 1 (emphasis added)), the Court stated: "There shall be no further extensions to the settings in this matter." (Doc. 77.) Accordingly, both motions to extend will be denied.

**THEREFORE**,

**IT IS ORDERED** that Defendants' Motion to Amend their Answer (Doc. 79) is **GRANTED** in part, and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendants' Motion to Extend (Doc. 101) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Extend (Doc. 102) is **DENIED.**

_____

**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**