**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

VOLKER STROBEL, HEIKE
STROBEL, and HANS BAUR,
in their individual capacities and on
behalf of UNC Holding LLC and
V.I.P. DRINKS BOTTING LLC,

        Plaintiffs,

v.   No. CIV 18-0656 RB/JFR

UWE RUSCH and DR. MABEL
RUSCH,

        Defendants.

## MEMORANDUM OPINION AND ORDER

After the Court granted Defendants' motion to amend, thereby allowing their Third Amended Counterclaim, Defendants immediately filed a motion for default judgment—arguing that Plaintiffs had erred by failing to file a responsive pleading six months earlier to Defendants' Second Amended Counterclaim. Plaintiffs moved to set aside default and for sanctions, arguing that Defendants' motion was baseless. The Court agreed that the motion was baseless and awarded sanctions. Defendants now ask the Court to reconsider.

The legal underpinnings of Defendants' motion for default judgment are convoluted. The Court affirms that sanctions are warranted under Rule 11, however, because Mr. Menhart filed the motion for an improper purpose. Thus, the Court will deny his motion to reconsider sanctions but will grant it in part and abate the portion of its order requiring payment in 30 days. Following resolution of the merits of this case, Mr. Menhart may move the Court to reconsider the amount of the sanctions award.

## I. Relevant Background

This lawsuit involves a disagreement between former business partners. Plaintiffs filed their Complaint in July 2018. (Doc. 1.) After some motion practice (*see* Docs. 7; 21), Defendants filed their original Answer and Counterclaims on February 15, 2019 (Doc. 23). After Plaintiffs moved for a more definite statement (Doc. 24), Defendants filed an Amended Answer, Affirmative Defenses and Counterclaims on March 11, 2019 (Doc. 27.) Following a stipulated motion to the Court, Defendants filed their Second Amended Answer, Affirmative Defenses and Counterclaims ("Second Amended Counterclaim") on April 4, 2019. (*See* Docs. 35; 36; 40.) Plaintiffs moved to dismiss the Second Amended Counterclaim on April 15, 2019. (Doc. 41.)

On January 3, 2020, the Court granted in part and denied in part Plaintiffs' motion to dismiss Defendants' Second Amended Counterclaim. (Doc. 75.) The Court dismissed seven causes of action and allowed eight to remain. (*Id.* at 24.) The Court noted that, in their response to the motion to dismiss, Defendants asked the Court to recognize other causes of action that they had failed to develop properly in their Second Amended Counterclaim. (*See id.* at 11, 22.) The Court declined to read those claims into the pleading and advised Defendants that if they wished to assert the claims, they would need to file a motion to amend. (*See id.* at 11, 22, 25.)

Ten days later, Defendants filed the motion to amend, seeking to add three of the four claims. (*See* Doc. 79 at 2; *see also* Doc. 79-1 ("Third Amended Counterclaim").) Plaintiffs responded and argued that six of the proposed claims would be futile and asked the Court to dismiss them. (*See* Doc. 85.) On June 1, 2020, the Court entered a Memorandum Opinion and Order granting in part and denying in part Defendants' motion to amend. (Doc. 103.) The Court explicitly stated that it treated Plaintiffs' response brief as a motion to dismiss under Rule 12(b)(6). (*See*, *e.g.*, *id.* at 2 ("The Strobel Parties filed a Response, which is treated as a Motion to Dismiss

2

the amended counterclaims."), 7 (noting that Defendants had provided "more detail to survive Plaintiffs' Motion to Dismiss") (citing Doc. 85).) The Court recited the standards relevant to both motions to amend and motions to dismiss. (*Id.* at 3.) Ultimately, the Court held that Defendants' motion to amend would be granted in part and denied in part. (*See id.* at 10.) While the Court did not state in the decretal portion that it was also granting in part and denying in part the Plaintiffs' motion to dismiss, a careful reading of the Opinion would lead the reader to that conclusion, as the Court framed its findings as "dismissals" of all but two of the disputed counterclaims.[1] (*See id.* at 4–11.) The Court did not direct Defendants to file a clean version of the Third Amended Counterclaim, nor did it direct Plaintiffs to file a responsive pleading to the Third Amended Counterclaim pursuant to Federal Rule of Civil Procedure 15(a)(3).

Hours after the Court granted in part Defendants' motion to amend, Defendants filed a Request for Clerk's Entry of Default Pursuant to Federal Rule of Civil Procedure 55. (Doc. 104.) Defendants' attorney, Mr. Eric Menhart, asserted that under Federal Rule of Civil Procedure 12(a)(4)(A), Plaintiffs had been required to file a responsive pleading to Defendants' Second Amended Counterclaim filed on April 4, 2019 (Doc. 40), within 14 days of the Court's January 3, 2020 Opinion (Doc. 75), which had granted in part and denied in part Plaintiffs' motion to dismiss the Second Amended Counterclaim. (Doc. 104-1 ¶¶ 2–5.) As the Court had not set out a different time for a responsive pleading, and Plaintiffs had not filed one within 14 days of the January 3,

---

[1] Specifically, the Court: (a) found Defendants "fail[ed] to state a claim upon which relief can be granted" on Counterclaim I and dismissed it (Doc. 103 at 4–5); (b) found Defendants did not have a cause of action under Counterclaim III and dismissed it (*id.* at 6); (d) declined to "entertain Plaintiffs' second attempt" to dismiss Defendants Counterclaim VI and allowed it to proceed (*id.*); (d) found that Defendants alleged facts sufficient "to survive Plaintiffs' Motion to Dismiss" Counterclaim VII regarding breach of contract, but not for a claim for breach of the covenant of good faith and fair dealing (*id.* at 7–8); (e) found insufficient "factual support to survive the Motion to Dismiss" Counterclaim VIII and dismissed it (*id.* at 8–9); and (f) found Defendants did "not plead[] sufficient facts to make out" Counterclaim IX and dismissed it (*id.* at 9–10).

2020 Opinion, Defendants argued that they were entitled to default judgment. (*See id.* ¶¶ 4–8, 14–15.) The Clerk entered default on June 3, 2020. (Doc. 107.)

Plaintiffs moved to set aside the entry of default and for sanctions against Mr. Menhart. (Docs. 108; 132.) Plaintiffs argued that Defendants' pleadings were not resolved until the Court entered its June 1, 2020 Opinion. (Doc. 109 at 2.) On June 15, 2020, Defendants filed a Motion for Leave to File [Third] Amended [Counterclaim] or Motion for Default Judgment After Resolution of Plaintiff's [sic] Default. (Doc. 123.) Defendants correctly noted that there was no formal deadline under Rule 15 to file their Third Amended Counterclaim. (*Id.* at 2.)

After the flurry of motions were fully briefed, the Court entered a Memorandum Opinion and Order granting Plaintiffs' motion to set aside default and imposing sanctions on Mr. Menhart. (Doc. 142.) The Court found that Defendants' motion to amend had tolled Plaintiffs' time to respond to Defendants' Second Amended Counterclaim pursuant to Rule 12(a)(4)(A). (*Id.* at 4.) Finding Defendants' request for entry of default baseless, the Court granted sanctions against Mr. Menhart. (*Id.* at 6–7.) The Court allowed Defendants five days to file their Third Amended Counterclaim, and Plaintiffs 14 days from the date of that filing to file responsive pleadings. (*Id.* at 9.) Defendants now move the Court to reconsider its order awarding sanctions. (Doc. 154.)

**II.     Standard**

Defendants ask the Court to reconsider its rulings pursuant to Federal Rule of Civil Procedure 60. (*See id.* at 1, 7.) Rule 60, however, applies to motions filed after judgment has been entered and does not provide a basis for the relief Defendants seek. *See Anderson Living Tr. v. WPX Energy Prod., LLC*, 312 F.R.D. 620, 642 (D.N.M. 2015) (discussing three categories of motions to reconsider); *accord Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). Because the Court's order awarding sanctions "was not a final judgment[,]" Defendants' motion to

4

reconsider "is considered 'an interlocutory motion invoking the [Court's] general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.'" *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008) (quoting *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991)). Such authority stems from Federal Rule of Civil Procedure 54(b). *See Price*, 420 F.3d at 1167 n.9.

"Rule 54(b) provides that a district court can freely reconsider its prior rulings." *Med Flight Air Ambulance, Inc. v. MGM Resorts Int'l*, No. 17-CV-0246 WJ/KRS, 2018 WL 1997292, at *5 (D.N.M. Apr. 27, 2018) (citing *Lujan v. City of Santa Fe*, 122 F. Supp. 3d 1215, 1238 (D.N.M. 2015)). "In addition, the rule 'puts no limit or governing standard [on] the district court's ability to do so, other than that it must do so before the entry of judgment.'" *Id.* (quoting *Lujan*, 122 F. Supp. at 1238 (internal quotation marks omitted)). The Tenth Circuit has stated that a district court "*may* look to the standard used to review a motion made pursuant to . . . Rule 59(e)[,]" *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013) (emphasis added), but it "has not cabined district courts' discretion beyond what [R]ule 54(b) provides[,]" *Lujan*, 122 F. Supp. at 1238 (citing *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007)). Thus, in revisiting a previous order in *Med Flight Air Ambulance*, United States Chief District Judge William P. Johnson was "guided by concerns of judicial economy, avoiding piecemeal litigation, and the posture of all the parties involved." *See* 2018 WL 1997292, at *6. And in *Lujan*, United States District Court Judge James O. Browning considered (1) "how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenge[d]"; (2) "the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties . . . produce[d]"; and (3) the grounds courts use to consider a motion to reconsider brought under Rule 59(e). 122 F. Supp. 3d at 1238–39; *see also Servants of Paraclete*

*v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

In accordance with this authority, the Court will analyze Defendants' motion pursuant to the Rule 59(e) standard of review. "Grounds for granting a motion to reconsider pursuant to Rule 59(e) include: '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Ankeney*, 524 F. App'x at 458 (quoting *Servants of the Paraclete*, 204 F.3d at 1012). As Defendants have not cited an intervening change in the controlling law or new evidence previously unavailable, the Court will analyze the motion only under the third ground.

### III.   Analysis

Defendants offer a variety of arguments to support their contention that the Court should reconsider its rulings. The Court will touch on each of them below before turning to the heart of the matter—Defendants' unwarranted motion for default.

#### A.   The Court gave Defendants the option to file a motion to amend in its January 3, 2020 Opinion.

In its July 10, 2020 Opinion granting Plaintiffs' motion for sanctions, the Court discussed language from its January 3, 2020 Opinion, which granted in part Plaintiffs' motion to dismiss the Second Amended Counterclaim. (*See* Doc. 142 at 3 (discussing Doc. 75 at 25).) The Court inadvertently stated that it gave Defendants 10 days to file an amended answer, when instead it gave them 10 days to file a *motion* to amend. (*See id.* (citing Doc. 75 at 25).) Defendants make much of the error. (Doc. 154 at 8.) Too much, if Defendants believe it warrants reversal. It does not.

#### B.   The Court did not err in referring to Plaintiffs' response as a motion to dismiss.

Defendants argue that the Court erred in referring to Plaintiffs' response to the motion to

6

amend as a motion to dismiss. (Doc. 154 at 11.) They contend that the response was "very clearly an *Opposition* to the Motion to Amend." (*Id.*) As discussed above in Section I, the Court inarguably construed Plaintiffs' response as a motion to dismiss. (*See* Doc. 103 at 2.) Defendants argue, without supporting authority, that a party cannot file a Rule 12 motion until the Court has resolved a motion to amend. (Doc. 156 at 4.) The Court disagrees. Plaintiffs' responsive arguments—that the motion to amend was futile because the counterclaims "would be subject to dismissal under Rule 12(b)(6)"—are essentially the same arguments they would make in a motion to dismiss. (*See* Doc. 85 at 2.) The Court could have granted the motion to amend and directed Plaintiffs to file a 12(b)(6) motion separately, which would have resulted in nearly identical briefing, unnecessary expenses, and more delay. *See*, *e.g.*, *Kee v. Town of Mountain Vill.*, No. 19-CV-01746-NYW, 2019 WL 6769858, at \*3 (D. Colo. Dec. 11, 2019) (finding that where party opposed motion to amend on grounds of futility, it was more efficient to consider the arguments in ruling on the motion to amend, rather than "awaiting another round of motions practice"). Defendants fail to show that the Court erred in treating Plaintiffs' response as a motion to dismiss.

### C. Defendants' reasoning for filing the motion for entry of default was improper.

Mr. Menhart asserts that Defendants filed the entry for default because they wanted "an opportunity to view Plaintiffs' Answer and affirmative defense[s] prior to the" deadline for pretrial motions.[2] (*See* Doc. 156 at 5; *see also* Doc. 76.) As the Court discusses in the section below, Mr. Menhart filed the motion for default judgment for an improper purpose.

---

[2] This tactic "is hardly unprecedented[,]" Mr. Menhart argues, citing *Banerjee v. University of Tennessee*, No. 3:17-cv-526, 2018 WL 10195668 (E.D. Tenn. Oct. 9, 2018). (*See* Doc. 154 at 14–15.) In *Banerjee*, the plaintiff filed a motion for default eight months after she believed the defendant's answer was due, in part on the basis that the failure to answer, coupled with the end of discovery, had prejudiced her ability to develop her case. *Id.* at \*3. Noting the defendant's active participation in the case and its lack of "bad faith in failing to timely file an answer[,]" the court found default judgment was unwarranted. *Id.* ("[I]t appears the defendants have not filed an answer because they genuinely believed they were not yet required to do

7

### D. While the legal arguments regarding which pleading was operative were not clear-cut, the motivation behind the motion was improper.

The July 10, 2020 Opinion does contain an error that requires discussion and clarification. The Court was under the mistaken impression that Defendants thought Plaintiffs should have filed a responsive pleading to the *proposed Third* Amended Counterclaim. (*See*, *e.g.*, Doc. 142 at 4 n.1.) Thus, the Court found that clear law counseled against a motion for default on such a basis. (*See* Doc. 142 at 4–6.) The Court's misinterpretation was due to Defendants' actual—and untenable—position: that Plaintiffs were required to file a response to the Second Amended Counterclaim despite both parties having actively litigated the matter for the intervening six months, and Defendants' filing (and the Court's granting) of the motion to amend. Even this misinterpretation does not warrant granting the motion to reconsider, though, because as the Court finds in Section III(D)(3) below, Mr. Menhart filed the motion for default judgment for an improper purpose.

There are two distinct issues underlying Defendants' position: (1) whether Defendants' motion to amend tolled the time for Plaintiffs to respond to the Second Amended Counterclaim; and (2) whether the Third Amended Complaint automatically became the operative pleading when the Court granted in part Defendants' motion to amend. While the Court finds that the answer to both questions should undoubtedly be "yes," it acknowledges that there is a dearth of caselaw directly on point. A dearth of authority that shouldn't come as a surprise, though. In the undersigned's long years on the bench, the pleading nightmare herein is unprecedented in terms

---

so or, at worst, due to mere inadvertence.") (quotation omitted). Mr. Menhart believes *Banerjee* "stands for the proposition that a Motion for Default in an on-going active litigation, even if unsuccessful, is not improper." (Doc. 154 at 15.) That was not the issue being decided, nor is it the lesson the Court draws from the case. The *Banerjee* court denied the motion for default in part because the plaintiff had waited so long to raise the issue, and her allegation of prejudice was easily "mitigated by a short extension of the discovery deadline." 2018 WL 10195668, at *3 (citation omitted). Mr. Menhart would have been wise to seek means of mitigation outside of moving for default judgment on a pleading that had just been mooted by the Court's Opinion.

8

of its voluminous, convoluted, and largely meritless nature.

### 1. The motion to amend tolled Plaintiffs' obligation to respond to the Second Amended Counterclaim.

Defendants generally argue that the Court erred in finding that the motion to amend tolled Plaintiffs' time to file a responsive pleading. (Doc. 154 at 9, 12–13.) Upon partially granting Plaintiffs' motion to dismiss Defendants' Second Amended Counterclaim on January 3, 2020, the Court gave Defendants ten days to file a motion to amend. (Doc. 75 at 25.) Defendants argue that they "were under no obligation to move to amend their counterclaims." (Doc. 154 at 9.) The Court agrees that had Defendants not moved to amend, Plaintiffs would have been required, under Rule 12(a)(4)(A), to file a responsive pleading to the Second Amended Counterclaim no later than January 17, 2020. But Defendants argue that because they chose to file a motion to amend, Plaintiffs were required to file two documents: (1) a responsive pleading pursuant to Rule 12(a)(4)(A); *and* (2) a response to the motion to amend. (*See id.*)

The Court agrees that after the January 3, 2020 Opinion, the Second Amended Counterclaim (with the changes rendered by the Court's decision) became the operative pleading. It holds now that Defendants' filing of the motion to amend tolled Plaintiffs' time to file a responsive pleading. Not surprisingly, neither party nor the Court has found a case with a fact pattern directly on point. Nevertheless, the Court finds this result is just and guided by reasoning in roughly similar precedent. For example, courts have found that the filing of a motion for summary judgment—while not mentioned in Rule 12(a)(4)(A)—has the same tolling effect as a motion to dismiss under the rule. *See*, *e.g.*, *Pena v. City of Rio Grande City, Tex.*, 398 F. Supp. 3d 127, 143 (S.D. Tex. 2019) (noting that "most courts have determined that Rule 12(a)(4) operates by analogy to a defendant that has filed a pre-answer summary judgment motion and, therefore,

have declined to find a defendant in default who fails to file an answer until after disposition of the motion") (gathering cases), *rev'd & remanded on other grounds*, 816 F. App'x 966 (5th Cir. 2020); *see also Meuli v. Comm'r of IRS, U.S.*, No. 13-CV-1114-JTM-KGG, 2013 WL 6480692, at *4 (D. Kan. Dec. 10, 2013) (finding that where plaintiff filed complaint and then filed motion to amend before defendants answered, the motion to amend restarted the clock for defendant to respond). The *Pena* court found that applying Rule 12(a)(4) in this way "is in keeping with judicial policy favoring the disposition of cases on their merits and discouraging 'termination of litigation by procedural maneuver.'" 398 F. Supp. 3d at 143 (quoting *Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)); *see also In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (noting that "[S]trong policies favor resolution of disputes on their merits"). Similarly, here, the motion to amend tolled Plaintiffs' obligation to file a responsive pleading pending decision on the motion, particularly because the Court construed their response to the motion to amend as a motion to dismiss under Rule 12(b)(6).

To find otherwise would result in the filing of unnecessary and duplicative pleadings. Take the case of *Shah v. KIK Int'l LLC*, No. 3:06-CV-712RLM, 2007 WL 1876449 (N.D. Ind. June 26, 2007). There, the defendant filed a third amended answer before the court had ruled on the plaintiffs' motion to dismiss the second amended answer. *Id.* at *1. The court found that plaintiffs did not need to respond to the third amended answer until it had ruled on the motion to dismiss. *Id.* To hold otherwise would "result[] in duplicative pleadings, confusion regarding the proper scope of discovery, unnecessary expenses, and wasted time." *Id.* (citing 5B Fed. Prac. & Proc. Civ. § 1346 (3d ed. 2020 1998)). Requiring Plaintiffs to file an amended answer to Defendants' Second Amended Counterclaim when they had also filed a motion to dismiss the Third Amended Counterclaim would create similar problems.

10

As the foregoing analysis demonstrates, the answer to whether Defendants' filing of the motion to amend restarted the 14-day clock under Rule 12(a)(4)(A) was not abundantly clear. Thus, had Defendants moved for default judgment on January 18, 2020, after it was clear that Plaintiffs did not intend to file a responsive pleading within 14 days of the Court's opinion, their motion would not have been planted on such shaky ground. But their decision to wait six months to move for default, and only after the Court had partially granted their motion to amend, leads to the next issue—whether the motion to default based on the Second Amended Counterclaim was automatically moot.

### 2. The Court's grant of Defendants' motion to amend rendered the Second Amended Counterclaim without legal effect.

The Court finds that the Third Amended Counterclaim automatically became the operative pleading on June 1, 2020, the date of the Court's Opinion that partially granted the motion to amend. This result, however, is not crystal clear under federal or local rules.

When the Court granted the motion to amend, it intended to make the *Third* Amended Counterclaim the operative pleading, rendering the *Second* Amended Counterclaim without legal effect. *See Falcon Indus., Inc. v. Combat Optical, Inc.*, No. 12CV0679 JCH/ACT, 2013 WL 12147618, at *2 (D.N.M. Dec. 9, 2013) (noting that the Tenth Circuit has held that an amended pleading "supersedes [the previous pleading] and renders the [previous pleading] without legal effect") (quoting *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007). In *Falcon Industries*, the plaintiff moved for default judgment and later filed an amended complaint. *Id.* The court held that the party's choice to file an amended complaint mooted its earlier motion for default judgment, which was based on the previously filed inoperative pleading. *See id.*

11

*Falcon Industries* is not on all fours with the circumstances here, however, as Defendants had not refiled their Third Amended Counterclaim on the docket. Thus, the issue for the Court is, which pleading was operative: the Third Amended Counterclaim, as modified by the Court's opinion, or the Second Amended Counterclaim? In other words, were Defendants required to refile the Third Amended Counterclaim before it became the operative pleading? No federal or local rule plainly answers this question.

Rule 15(a) discusses when a party may amend and when a party must respond to an amended pleading, but it does not explicitly mandate that a party must refile an amended pleading after a court grants a motion to amend. Plaintiffs would argue that Rule 15(a)(3) implicitly requires a party refile an amended pleading, but neither Plaintiffs nor the Court has found binding authority from the Tenth Circuit or Supreme Court to support such a reading.

To eliminate this dilemma, some districts have a local rule mandating that parties re-file amended pleadings upon the grant of a motion to amend. *See*, *e.g.*, D. Kan. LR-Civ. 15.1(b) (providing that if the court grants a motion to amend, "the moving party must file and serve the pleading within 14 days of the court's order granting the motion, or as the court otherwise directs"); D. Utah. LR-Civ. 15-1(c) (same). The District of New Mexico does not have a similar rule.

In the absence of such a rule or clear direction by the Court on when to refile an amended pleading, the Court posits that a proposed amended pleading attached to the motion to amend qualifies as the operative pleading. That result was clearly the Court's intention here, where it accepted Defendants' Third Amended Counterclaim as modified by its dismissal of several counterclaims. But as the foregoing discussion shows, this finding is not so clear-cut that the Court may definitively find Defendants' motion was frivolous on this basis.

### 3. The motion for default judgment was filed for an improper purpose.

"Rule 11 requires that the pleading be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose." *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993). While the legal arguments underpinning Mr. Menhart's motion for default judgment were theoretically supportable, it does not appear that he filed the motion for a proper purpose. Rather, Mr. Menhart asserts that he filed the motion for "an opportunity to view Plaintiffs' Answer and affirmative defense[s] prior to the" deadline for pretrial motions, which was set for June 15, 2020—exactly two weeks later. (*See* Doc. 156 at 5; *see also* Doc. 76.) Without further justification, this reasoning does not provide a proper basis for a motion for default judgment.

"The purpose of a default judgment is to protect a diligent party against an unresponsive adversary." *Commodity Futures Trading Comm'n v. Venture Cap. Invs. Ltd*, No. 120CV00382DDDMEH, 2020 WL 6450443, at *2 (D. Colo. Nov. 2, 2020) (citing *In re Rains*, 946 F.2d at 732–33). Mr. Menhart has represented to the Court that he contacted Plaintiffs' counsel, Mr. Jeffrey Squires, on June 1, 2020, to inform him that he planned to request default. (*See* Doc. 154 at 4.) Mr. Squires "suggested that he was under no obligation to timely file a response until Defendants themselves filed additional papers." (*Id.* at 5.) Mr. Squires then "demand[ed] that Defendants file a Third Amended Counterclaim." (*Id.*) Far from being unresponsive, Mr. Squires informed Mr. Menhart of his understanding of Rule 15(a)(3)—that the rule "assumes an amended [pleading] will be filed, anticipates service of that pleading, and provides a renewed time for an answer." (Doc. 133 at 2 (quoting *Adams v. C3 Pipeline Constr.*,

13

No. CV 18-925 KG/GBW, 2020 WL 486977, at *3 (D.N.M. Jan. 30, 2020), *R. & R. adopted*, 2020 WL 822969 (Feb. 19, 2020*)*).)

Mr. Menhart was faced with a choice: he could move the Court for a status conference or otherwise seek clarification regarding its expectations of filing deadlines, or he could move for default on a hyper-technical and now seemingly moot point. He chose the latter. What's more, Defendants were directly responsible, at least in part, for much of the delay in this case. (*See*, *e.g.*, Docs. 35 (joint motion to extend); 44 (Defendants' motion to extend time to respond to motion to dismiss); 53 (noting joint motion to extend deadlines in scheduling order); 73 (joint motion to extend deadlines in scheduling order).) Defendants have also filed four iterations of their answer and counterclaims (Docs. 23; 27; 40; 79-1; *see also* Doc. 145), necessitating four opinions resolving motions related to their answers (*see* Docs. 75; 103; 142; and today's opinion). Had they taken more care to stay within the boundaries of the original or first amended scheduling orders, they would have had more time between the filing of their operative pleading and the dispositive motion deadline. (*See* Docs. 34; 54.) In other words, Defendants' own conduct directly led to their later scheduling inconveniences.

The Tenth Circuit has called default judgment "[a] drastic remedy" that "is usually appropriate only where a lesser sanction would not serve the interest of justice." *Sours v. Glanz*, 24 F. App'x 912, 915 (10th Cir. 2001) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir. 1988), *abrogated on other grounds by Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013)). Moreover, "courts do not favor such a sanction 'purely as a penalty for delays in filing or other procedural error[,]'" which is precisely the legal foundation offered in this case. *See Noland v. City of Albuquerqu*e, No. CIV 08-0056 JB/LFG, 2009 WL 2424591, at *1 (D.N.M. June 18, 2009) (quoting *In re Rains*, 946 F.2d at 733). Beyond any shadow of a doubt,

14

the circumstances here—where both parties have been actively litigating their claims and counterclaims—do not present a situation where default judgment would serve the interests of justice.

The Court agrees that the philosophical question of what pleading was operative at the moment the Court granted the motion to amend (but the amended pleading had not been refiled) is not a settled question in this district, and a motion based solely on this question could be warranted. But Plaintiffs were not unresponsive, and the attorneys' disagreement about whether Defendants were required to refile their amended pleading could have been resolved more professionally and without the delay brought on by the motion for default judgment. Ultimately, the Court finds distasteful such "'gotcha!'-style litigation, where parties seek judgment based on technical errors[ rather than] the merits of the case." *See Lariviere, Grubman & Payne, LLP v. Phillips*, No. CIVA 07CV01723MSKCBS, 2008 WL 4097466, at *8 (D. Colo. Sept. 4, 2008).

The Court's award of sanctions for the improper motion was justified. However, the record reveals that Mr. Squires also bears some responsibility for the numerous extensions in this case and for the rancor that has developed between the parties. While Mr. Menhart's decision to file this motion is indefensible, Mr. Squires failed to extend the professional courtesy of filing an expedited answer to the Third Amended Counterclaim, which was clearly the operative pleading after the June 1, 2020 Opinion. Mr. Squires was also capable of moving the Court for a status conference or for clarification regarding filing deadlines, but he did not, which contributed to the dispute.

Considering the above, the Court will deny the motion to reconsider, but it finds that its award of sanctions deserves a second look and further briefing by the attorneys. Thus, it will abate the portion of the Order Imposing Sanctions (Doc. 153) that requires payment in 30 days.

Following resolution of this lawsuit's merits, the Court will afford Mr. Menhart an opportunity to respond to the declaration regarding fees (*see* Doc. 149). At that time, Mr. Menhart may move the Court to reconsider the amount of the sanctions award.

**THEREFORE**,

**IT IS ORDERED** that Defendants' Rule 60 Motion for Relief from the Orders Imposing Sanctions (Doc. 154) is **GRANTED IN PART** in that the Court will abate the portion of its order requiring payment of the sanctions award within 30 days, the Rule 60 Motion is **DENIED** in all other respects;

**IT IS FURTHER ORDERED** that the Order Imposing Sanctions (Doc. 153) is **ABATED in part**: the Court abates that portion of its order requiring payment of sanctions within 30 days;

**IT IS FURTHER ORDERED** that <u>within 14 days after the Court has entered final judgment on the merits of this case</u>, Mr. Menhart may file a motion and brief responding to the declaration regarding attorney's fees and asking the Court to reconsider the amount of the sanctions award (*see* Doc. 149);

**IT IS FURTHER ORDERED** that Defendants' Rule 62 Request to Stay Execution of the Judgment re Sanctions Pending Post-Trial Motions and Appeal and to Approve Supersedeas Bond (Doc. 158) is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Surreply (Doc. 163) is **DENIED AS MOOT**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE