# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

VOLKER STROBEL, HEIKE
STROBEL, and HANS BAUR,
in their individual capacities and on
behalf of UNC Holding LLC and
V.I.P. DRINKS BOTTING LLC,

        Plaintiffs,

v.                                       No. CIV 18-0656 RB/JFR

UWE RUSCH and DR. MABEL
RUSCH,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

After the parties to this lawsuit had been actively litigating their claims for almost two years, defense counsel Eric Menhart filed a motion for default judgment based on a pedantic and moot point. Despite opposing counsel's clear warning that Plaintiffs would move for sanctions lest he withdraw the motion, Mr. Menhart plowed forward. The Court ultimately found that Mr. Menhart filed the motion for an improper purpose and granted Plaintiffs' motion for sanctions against him in the form of an attorney's fee award. After further briefing, the Court offered Mr. Menhart a second chance to respond to the fee declaration and argue for a lower sanctions award at the conclusion of the case.

With the parties' claims settled, the Court entered an order of dismissal on January 13, 2021. Mr. Menhart now moves for a final order regarding the sanctions. Conspicuously absent from the motion is any argument regarding the amount of the fee award. In this Opinion, the Court undertakes an analysis of the appropriate amount of sanctions it should impose to deter such conduct.

A.      **Because Mr. Menhart has never disputed the amount of the fee award, the Court must determine its reasonableness without his input.**

The Court turns first to what should have been the crux of Mr. Menhart's motion: whether the previously issued sanctions award is reasonable. In its Opinion granting in part Defendants' Rule 60 Motion, the Court noted that Plaintiffs' counsel, Jeffrey Squires, "bears some responsibility for the numerous extensions in this case and for the rancor that has developed between the parties." (*See* Doc. 180 at 15.) The Court found that its previous award of sanctions "deserve[d] a second look and further briefing by the attorneys." (*Id.*; *see also* Doc. 153 (awarding $8,060 in attorney's fees as a sanction).) As Mr. Menhart never countered Mr. Squires's claimed attorney's fees (*see* Doc. 149), the Court decided to "afford Mr. Menhart an [additional] opportunity to respond to the declaration regarding fees." (Doc. 180 at 16.) The Court abated the sanctions award and held "that within 14 days after the Court has entered final judgment on the merits of this case, Mr. Menhart may file a motion and brief responding to the declaration regarding attorney's fees and asking the Court to reconsider the amount of the sanctions award." (*Id.* (underlining omitted).)

Despite the Court's unambiguous willingness to lower the amount of the attorney fee awarded as a sanction, Mr. Menhart has opted not to specifically respond to the reasonableness of the claimed fees. (*See* Doc. 206.) Mr. Menhart has had two opportunities to dispute the fees, and he has ignored both. (*See* Docs. 153 at 1 (noting that Mr. Squires's declaration had not been challenged); 206; 208 at 1–2 (making an offer of settlement on the fee award without discussing whether the original award was reasonable).) As Mr. Menhart makes no substantive argument regarding the fee award, the Court has no other choice but to come to its own conclusion regarding what amount is reasonable.

As the Court noted in its December 2, 2020 Opinion, Mr. Menhart's motion for default

judgment "on a hyper-technical and . . . seemingly moot point" in a lawsuit where both parties had

been actively involved, and only then as "an opportunity to view Plaintiffs' Answer and affirmative

defense[s] prior to the deadline for pretrial motions," was highly improper. (*See* Doc. 180 at 14–

15 (citations and quotation marks omitted).) The simpler and far more professional choice would

have been to seek the Court's guidance regarding its expectations of filing deadlines, particularly

where "Defendants' own conduct directly led to their later scheduling inconveniences." (*See id.* at

14.) On the other hand, Mr. Squires likewise contributed to the bad feelings between counsel. (*See*

*id.* at 15.) Rather than "extend[ing] the professional courtesy of filing an expedited answer to the

Third Amended Counterclaim, which was clearly the operative pleading[,]" or "moving the Court

for a status conference or for clarification regarding filing deadlines," Mr. Squires chose to escalate

an already volatile situation. (*See id.*) "When imposing attorney's fees as a sanction under Rule

11, [the Tenth Circuit has] highlighted four factors for a district court to consider." *King v.*

*Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018).

> Those are (1) the reasonableness of the proposed fees, (2) the minimum amount
> required to deter misconduct, (3) the offender's ability to pay, and (4) 'other factors'
> as the court sees fit, such as the offending party's history, experience, and ability;
> the severity of the violation; and the risk of chilling zealous advocacy.

*Id.* (citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 684–85 (10th Cir. 1990)).

### 1.    Reasonableness of Proposed Fees

"When reviewing the reasonableness of a request, a reviewing court looks at both the

amount of time spent and whether the hourly rate for that time was reasonable." *Id.* (citing *White*,

908 F.2d at 684). "The injured party has a duty to mitigate costs by not overstaffing,

overresearching or overdiscovering clearly meritless claims." *Id.* (quoting *White*, 908 F.2d at 684).

Here, the Court previously found that of the fees Mr. Squires claimed, $8,060 was a reasonable

amount. (*See* Doc. 153.) Despite Mr. Menhart's failure to argue for any reduction, the Court will

examine whether the hours and rates claimed are reasonable.

Of the 21.4 hours approved regarding the motion to set aside default (*see id.* at 2), Mr. Squires spent 12.6 hours and Mr. Santamaria spent 8.8 hours. (*See* Doc. 149 at 3–4.) Ordinarily, the Court would find that spending 21.4 hours to draft a ten-page brief is excessive. Here, however, the Court recognizes that the issues at play in the motion to set aside default were more "convoluted" (*see* Doc. 180 at 1) and will approve the hours claimed.

Plaintiffs request hourly rates as follows: $500/hour for Mr. Squires, an attorney with almost 50 years of experience who is "Of Counsel" with Peacock Law; and $200/hour for Mr. Santamaria, who graduated from the University of New Mexico School of Law in 2020 and who had not yet taken the bar exam at the time of the declaration. (*See* Doc. 149 at 2 ¶ 2.) Mr. Squires provides his own resume and Mr. Santamaria's. (*See id.* at 6–9.)

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." *O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1074 (D.N.M. 2018) (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1224–25 (10th Cir. 2006)) (subsequent citation omitted). "Plaintiffs must provide evidence of the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community." *Lippoldt*, 468 F.3d at 1224–25 (citations and quotation marks omitted). Evidence "is typically established through the affidavits of local attorneys who practice in the same field as the attorneys seeking the fees." *Mosaic Potash Carlsbad, Inc. v. Lintrepid Potash, Inc.*, No. 16-CV-0808 KG/SMV, 2018 WL 2994412, at *3 (D.N.M. June 14, 2018) (citations omitted). Here, Mr. Squires did not include any information about the prevailing market rate in the community. (*See* Doc. 149.) Thus, the Court will rely on its own research and knowledge to set appropriate hourly rates. *See Mosaic Potash*, 2018 WL 2994412, at *3 (noting

4

that a court "may use other factors, including its own knowledge, to establish the rate" if the attorneys fail to submit adequate evidence) (citation omitted).

In a breach of contract case decided on the basis of an unopposed motion to enforce a settlement agreement, the undersigned awarded $375/hour to a founding partner with more than 20 years' experience in commercial litigation claims and $175/hour to a second-year associate. *Got Prods. LLC v. Zepto LLC*, No. CIV 18-0893 RB/LF, 2020 WL 1288568, at *3 (D.N.M. Mar. 18, 2020). In 2019, United States Magistrate Judge Gregory J. Fouratt awarded $450/hour to an attorney who prevailed on a summary judgment motion regarding the plaintiff's breach of contract claim. *Daniel & Max, LLC v. BAB Holding Co., LLC*, No. CV 19-173 GJF/GBW, 2019 WL 3936865, at *1–2 (D.N.M. Aug. 20, 2019). The attorney had "over thirty years of complex federal litigation experience as a shareholder of a major New Mexico law firm" and had submitted an affidavit from a local attorney that "further establishe[d] the reasonableness of [his] hourly rate." *Id.* at *2. The court awarded $190/hour for an associate of the firm. *See id.*

In 2017, United States District Judge James O. Browning awarded $375/hour to an attorney in a relatively complex lawsuit that "was likely headed toward a class action . . . ." *Fallen v. Grep Sw., LLC*, 247 F. Supp. 3d 1165, 1198 (D.N.M. 2017) (citation omitted). Judge Browning noted that the "rate approaches the upper end of what the local market would currently bear for the hourly rate of a very experienced partner engaged in complex, multi-party commercial litigation." *Id.* (gathering cases). In 2016, Judge Browning awarded $350/hour to lead trial counsel, $300/hour to a partner, and $175 to an associate in a putative class action brought under the New Mexico Minimum Wage Act. *Payne v. Tri-State Careflight, LLC*, No. CIV 14-1044 JB/KBM, 2016 WL 5376321, at *13 (D.N.M. Aug. 17, 2016). In 2016, Judge Browning found that $350/hour was a reasonable rate "for a very experienced partner" doing "high end commercial work." *XTO Energy,*

5

*Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 5376322, at *13 (D.N.M. Aug. 22, 2016).
And in 2018, United States Magistrate Judge Karen B. Molzen, in a lawsuit brought in part under
the Fair Credit Reporting Act, found that an attorney who had been practicing for 19 years was
entitled to a rate of $250/hour, and an attorney who had been practicing for 13 years was entitled
to a rate of $200/hour. *Schueller v. Wells Fargo & Co.*, No. CIV 16-0107 MV/KBM, 2018 WL
2943245, at *3, *5 (D.N.M. June 12, 2018). Judge Molzen noted that the lawsuit was neither high-
end nor complex. *Id.* at *5.

This lawsuit is neither high-end nor complex, but the motion at issue did deal with unique
procedural issues. Consequently, the Court finds the following rates should be awarded:

- Mr. Squires: $400/hour x 12.6 hours = $5,040

- Mr. Santamaria: $150/hour x 8.8 hours = $1,320

The total attorney fee award based on hours and rates, before considering whether it should
be reduced due to Mr. Squires's own responsibility in this matter, is $6,360. The Court finds this
amount reasonable considering the experience of Mr. Squires and Mr. Santamaria and the content
and length of the motion.

## 2.      Minimum Required to Deter

"[T]he primary purpose of sanctions is to deter attorney and litigant misconduct, not to
compensate the opposing party for its costs in defending a frivolous suit." *King*, 899 F.3d at 1156
(quoting *White*, 908 F.2d at 684). "Therefore, otherwise 'reasonable' fees are excessive if they are
greater than 'that amount reasonably necessary to deter the wrongdoer.'" *Id.* (quoting *White*, 908
F.2d at 685). The Court has given Mr. Menhart ample opportunity to present arguments regarding
the reasonableness of the fee. He has chosen not to avail himself of these opportunities, declining
to respond to Mr. Squires's original declaration (Doc. 149) and choosing not to take advantage of

the Court's offer to "respond to the declaration . . . [and] move the Court to reconsider the amount of the sanctions award." (Doc. 180 at 16.) Instead, he offers a flat $500 in settlement. (*See* Doc. 206.) Previously, he argued that no amount of sanctions would be appropriate. (*See* Doc. 154 at 14–16.)

As discussed above, Mr. Squires played a role in escalating the procedural morass at issue. The Court was transparent in its willingness to reduce the fee award, had Mr. Menhart deigned to submit a brief on the appropriateness of the award. (*See* Doc. 180 at 15.) Yet given that Mr. Menhart continues to shrug off any impropriety in filing the motion for default judgment, the Court finds that the full attorney's fee award as calculated above is appropriate to emphasize Mr. Menhart's role in this matter and to deter future misconduct.

### 3.     Ability to Pay

"'[B]ecause the purpose of monetary sanctions is to deter attorney and litigant misconduct,' district courts must consider the offender's ability to pay." *King*, 899 F.3d at 1156 (quoting *White*, 908 F.2d at 685). "The sanctioned party bears the burden to prove its inability to pay an otherwise-appropriate sanction." *Id.* (citing *White*, 908 F.2d at 685). As Mr. Menhart has not offered any argument on his ability to pay, the Court does not consider this factor. *See id.*

### 4.     "Other" Factors

"In addition, the court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances." *Id.* (quoting *White*, 908 F.2d at 685). As the Court acknowledged in its December 2, 2020 Opinion, "[t]he legal underpinnings of Defendants' motion for default judgment are convoluted[,]" and neither the parties nor the Court found caselaw

directly on point. (*See* Doc. 180 at 1, 8 ("A dearth of authority that shouldn't come as a surprise though[,]" given the motion for default's "largely meritless nature.").) The Court would not ordinarily impose Rule 11 sanctions on an attorney for arguing a novel point of law, for as Mr. Menhart points out, "[t]here is some argument . . . that failing to move for a default when one is appropriate is not adequately serving the interests of the counsel's client." (*See* Doc. 126 at 11.) Yet the key to the propriety of sanctions here is found within that sentence—"failing to move for a default *when one is appropriate.*" Mr. Menhart's motion for default judgment, which he acknowledged was filed as "an opportunity to view Plaintiffs' Answer and affirmative defense[s]" (Doc. 156 at 5) and was based on Plaintiffs' alleged failure to respond to a then-moot pleading, *was not appropriate.* (*See* Doc. 180 at 11–12.) Plaintiffs had not "failed to plead or otherwise defend[,]" *see* Fed. R. Civ. P. 55(a); rather, they had been actively litigating this matter for almost two years. "'[C]ourts do not favor [default judgment] purely as a penalty for delays in filing or other procedural error[,]' which [was] precisely the legal foundation offered in this case." (Doc. 180 at 14 (quoting *Noland v. City of Albuquerque*, No. CIV 08-0056 JB/LFG, 2009 WL 2424591, at *1 (D.N.M. June 18, 2009)).) Given Mr. Menhart's repeated refusal to acknowledge any wrongdoing, the Court finds that consideration of all four factors support an award of sanctions. Further, an award of $6,360 is more than reasonable under the circumstances.

### B.     The Court levied sanctions against Mr. Menhart.

In his reply brief, Mr. Menhart asserts that "Defendants, not [Mr. Menhart], were subject to the sanctions." (Doc. 208 at 1 (citations omitted).) He is incorrect. It was never the undersigned's intent to sanction Mr. and Dr. Rusch, and the record reflects that.

Plaintiffs moved "for Sanctions Against Defendants' Counsel" (*see* Doc. 132 at 1), which the Court noted in its original Opinion. (*See* Doc. 142 at 7 (noting that "Plaintiffs move the Court

to sanction Defendants' attorney for needlessly requesting entry of default at this stage of the litigation").) In the section of its Opinion related to sanctions, the Court began by stating that "[t]he Federal Rules of Civil Procedure hold *attorneys* accountable to each other and the Court to ensure that pleadings and motions are not filed 'for any improper purpose[,]'" and that when "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction an any *attorney* . . . that violated the rule or is responsible for the violation.'" (*Id.* at 6 (quoting Fed. R. Civ. P. 11(b)(1)) (emphasis added).) The Court acknowledges its improvident use of language finding that sanctions are appropriate "because *Defendants* wasted the resources of both the Plaintiffs and the Court." (*Id.* at 7 (emphasis added); *see also* Doc. 153 at 3 (ordering Defendants to pay the sanction award).)

Any confusion was cleared up, however, with the Court's December 2, 2020 Opinion granting in part Defendants' Rule 60 Motion for Relief from the Orders Imposing Sanctions. (*See* Docs. 154; 180.) There, the Court unequivocally found that "*Mr. Menhart* filed the motion [for default judgment] for an improper purpose." (Doc. 180 at 1.) In fact, the December Opinion is riddled with references to Mr. Menhart as the subject of the Rule 11 sanctions. (*See id.* at 4 (noting that the Court had granted "Plaintiffs' motion to set aside default and imposing sanctions on Mr. Menhart"); 7 ("Mr. Menhart filed the motion for default judgment for an improper purpose"); 15 (noting that "Mr. Menhart's decision to file [the] motion is indefensible"); 16 (allowing Mr. Menhart to "file a motion and brief responding to the declaration regarding attorney's fees and asking the Court to reconsider the amount of the sanctions award").)

Mr. Menhart has never disputed any of the findings clearly tagging him as the sanctioned party. Nor does it make any sense that he would file an offer of "settlement" if he truly thought Defendants were on the hook for sanctions, given that he no longer represents them. Thus, his

9

posturing at this late stage as an innocent bystander taking the high road is unavailing. (*See*, *e.g.*, Doc. 208 at 2 (noting that Mr. Menhart is doing the Court "one better" by offering to settle the matter now, instead of appealing to the Tenth Circuit).) Mr. Menhart shall pay the fee award as outlined in this Opinion.

**THEREFORE,**

**IT IS ORDERED** that Mr. Menhart's Motion for Final Order Regarding Previous Court Order Re: Sanctions is **DENIED**;

**IT IS FURTHER ORDERED** that Mr. Menhart is to pay $6,360 to Plaintiffs' counsel within 30 days of this Order and provide notice of payment to the Court.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE